CHRISTOPHER QUERO, COURTNEY
FRANCIS, and KELLIN RODRIGUEZ,
individually and on behalf of all persons similarly
situated,

                       Plaintiffs,

             -against-

ELISABETH DEVOS, in her official capacity as
Secretary of the United States Department of
Education,

                    Defendant.

**No. 18-cv-9509**

**CLASS ACTION
COMPLAINT**

## PRELIMINARY STATEMENT

1.     Named Plaintiffs Christopher Quero, Courtney Francis, and Kellin Rodriguez, and

members of the proposed class, obtained federal student loans to attend the Technical Career

Institutes, Inc. ("TCI"), a for-profit college in Manhattan. On September 1, 2017, TCI suddenly

shut down, leaving Plaintiffs unable to complete their programs of study.

2.     Federal student loan borrowers who, like Plaintiffs, attend a school that closes

may be eligible for a "closed school discharge" of the loans they obtained to attend the closed

school. A closed school discharge relieves the borrower of any repayment obligation, refunds to

the borrower any money already paid, and removes those loans from the borrower's credit report.

3.     Federal regulations provide that when a school closes, Defendant Elisabeth

DeVos (the "Secretary"), as Secretary of the United States Department of Education (the

"Department"), must notify all potentially eligible borrowers about the availability of a closed

school discharge by mailing each borrower the discharge application form and an explanation of the qualifications and procedures for obtaining the discharge. Upon doing so, the Department must suspend collection on affected loans for sixty days.

4. When TCI closed, however, the Department did not mail the application form to Plaintiffs or suspend collection on their loans.

5. Plaintiffs have twice written the Department to demand that the Department notify eligible borrowers and suspend collection, as required. The Department has refused to take this action.

6. As a result of the Department's failure and refusal to send notices and suspend collection, members of the putative class remain unaware of the availability of a closed school discharge and are subject to ongoing collection on their TCI loans, which can harm their credit and impair their ability to obtain student loans in the future.

7. Plaintiffs bring this action on behalf of themselves and a class of similarly situated borrowers under the Administrative Procedure Act, 5 U.S.C. § 706, seeking an injunction directing Defendant to send all class members notice of their potential eligibility for closed school discharge of their TCI loans and to suspend collection on those loans, and a declaration that the Defendant has unlawfully withheld agency action and acted arbitrarily and capriciously and otherwise not in accordance law.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, the Administrative Procedure Act, 5 U.S.C. § 702, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because one or

more Plaintiffs resides in this district, a substantial part of the events giving rise to these claims occurred in this district, and Defendant has a regional office in this district.

## PARTIES

10.     Plaintiff Christopher Quero lives in the Bronx, New York.

11.     Plaintiff Courtney Francis lives in Brooklyn, New York.

12.     Plaintiff Kellin Rodriguez lives in the Bronx, New York.

13.     Defendant Elisabeth DeVos is the Secretary of the United States Department of Education.

## STATUTORY AND REGULATORY FRAMEWORK

14.     The Higher Education Act of 1965 ("HEA") and its amendments authorize the William D. Ford Federal Direct Loan ("Direct Loan") Program, through which the Department lends money directly to eligible postsecondary students or their parents. 20 U.S.C. § 1087a *et seq*.

15.     In her official capacity, the Secretary oversees all operations of the Department and the administration of federal student loan programs, including the Direct Loan program, and has the ultimate duty and power to collect, discharge, cancel, settle, or compromise federal student loans.

16.     The HEA provides that if a Direct Loan borrower (or student on whose behalf a parent borrowed) "is unable to complete the program in which such student is enrolled due to the closure of the institution . . . then the Secretary shall discharge the borrower's liability on the loan (including interest and collection fees)." 20 U.S.C. § 1087(c)(1); *see also* 20 U.S.C. § 1087a(b)(2); 34 C.F.R. §§ 685.212(d), 685.214.

17.     The Department has promulgated regulations regarding closed school discharge

for Direct Loans, codified at 34 C.F.R. § 685.214.

18. A borrower is eligible for a closed school discharge if the borrower (or, in the case of a parent borrower, the student on whose behalf the loan was obtained) meets three requirements: the student (1) "[r]eceived the proceeds of a loan, in whole or in part, on or after January 1, 1986 to attend a school"; (2) "[d]id not complete the program of study at that school because the school closed while the student was enrolled, or the student withdrew from the school not more than 120 days before the school closed"; and (3) "[d]id not complete the program of study through a teach-out at another school or by transferring academic credits or hours earned at the closed school to another school." 34 C.F.R. § 685.214(c)(1)(i) (the "Eligibility Regulation").

19. A "teach-out" is a formal agreement between an operating school and the closing school that the operating school will provide to the closing school's students an educational program of acceptable quality and reasonably similar structure. *See* 34 C.F.R. § 602.24(c)(5)(i)(A).

20. The closed school discharge regulation thus provides each borrower whose school closes two choices: "the option to complete their program through a teach-out [or credit transfer]" and "the option for a closed school discharge." *See* 81 Fed. Reg. 39,330, 39,369 (June 16, 2016).

21. The Department has recognized that "[t]hough teach-outs can be beneficial to borrowers in a closed school situation, a closed school discharge may be a better option for some students." *Id.*

22. Each borrower should "make an informed decision based on full knowledge of [their] options" about whether to transfer or obtain a discharge. *See* 81 Fed. Reg. 75,926, 76,034

4

(Nov. 1, 2016).

23. Discharge of a student loan entitles the borrower to: (1) relief from any existing or past obligation to repay the loan and associated costs or charges; (2) reimbursement of amounts paid voluntarily or through enforced collection; (3) the restoration of the borrower's eligibility to receive federal assistance under the HEA; and (4) correction of all adverse credit reports by reporting the discharge to all credit reporting agencies. 34 C.F.R. § 685.214(b) (the "Relief Regulation").

24. A borrower must apply for a closed school discharge by submitting a written request and sworn statement made under penalty of perjury. 34 C.F.R. § 685.214(c)(1). The Department has prepared an application form that a borrower may use to submit his or her request. *See* Loan Discharge Application: School Closure, OMB Control Number 1845-0058. This form is posted in the Department's online "Form Directory," https://studentloans.gov/ myDirectLoan/formLibrary.action. Even though this form states that it expired on August 31, 2017, it remains the form currently in use.

25. When a school closes, the Department must notify all potentially eligible students of the availability of a closed school discharge and suspend collection on those borrowers' loans from the closed school.

26. Specifically, the Department must: (1) "identif[y] any Direct Loan borrower (or student on whose behalf a parent borrowed) who appears to have been enrolled at the school on the school closure date or to have withdrawn not more than 120 days prior to the closure date"; (2) "mail[] the borrower a discharge application and an explanation of the qualifications and procedures for obtaining a discharge"; and (3) "promptly suspend[] any efforts to collect from the borrower on any affected loan." 34 C.F.R. § 685.214(f)(1-3) (the "Notice and Suspend

Regulation").

27.     If the sixty-day period of suspension ends and the borrower has not submitted an application, the Department may resume collecting upon the borrower's loan. 34 C.F.R. § 685.214(f)(4).

28.     On November 1, 2016, the Department issued a Final Rule. *See* 81 Fed. Reg. 75,926 (Nov. 1, 2016) ("the 2016 Final Rule").

29.     The 2016 Final Rule did not amend or otherwise affect the Eligibility Regulation, the Relief Regulation, or the Notice and Suspend Regulation, which have been in effect for many years.

30.     As part of the 2016 Final Rule, the Department promulgated a new regulation that states that "[u]pon resuming collection" at the end of the suspension period provided by the Notice and Suspend regulation, the Department must "provide[] the borrower another discharge application and an explanation of the requirements and procedures for obtaining a discharge." 34 C.F.R. § 685.214(f)(5) (the "Second Notice Regulation"); *see also* 81 Fed. Reg. 75,926, 76,081-82 (Nov. 1, 2016).

31.     The 2016 Final Rule was scheduled to become effective on July 1, 2017. 81 Fed. Reg. 75,926, 75,926 (Nov. 1, 2016). However, the Department stayed, and then delayed, the effectiveness of the majority of the 2016 Final Rule, including the Second Notice Regulation. *See* 82 Fed. Reg. 27,621 (June 16, 2017) (issuing stay); 82 Fed. Reg. 49,114 (Oct. 24, 2017) (interim delay); 83 Fed. Reg. 6,458 (Feb. 14, 2018) (final delay).

32.     The Department's stay and delay of the 2016 Final Rule, including the Second Notice Regulation, were recently held to be arbitrary and capricious, in violation of the Administrative Procedure Act. *Bauer v. DeVos*, No. CV 17-1330 (RDM), 2018 WL 4353656, at

*25 (D.D.C. Sept. 12, 2018).

33. The reviewing court determined that the appropriate remedy for the Department's arbitrary and capricious action was vacatur of the stay and delay. *Bauer v. DeVos*, No. CV 17-1330 (RDM), 2018 WL 4483783, at *3 (D.D.C. Sept. 17, 2018).

34. As of October 16, 2018 at 12:00p.m., the stay and delay of the 2016 Final Rule were vacated. *See* Minute Order (Oct. 12, 2018), *Bauer v. DeVos*, No. CV 17-1330 (RDM). As a result, the 2016 Final Rule, including the Second Notice Regulation, is currently in effect and, as a legal matter, is effective retroactive to July 1, 2017, the date it would have become final absent the unlawful stay and delay.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

35. TCI was a for-profit college that offered Associate's Degrees in technology-related fields. Until it closed, TCI operated in Midtown Manhattan, at 320 West 31st Street, New York, NY 10001.

36. At the start of the 2016-2017 school year, TCI had an enrollment of 1,400 students. Three-quarters of these students obtained federal student loans to finance their attendance at TCI.

37. TCI's students were predominately low-income. Over 80% of TCI students received Federal Pell Grants, which are available only to low-income students.

38. TCI permanently closed on September 1, 2017.

39. TCI's closure came as a surprise to its students. On August 21, 2017 — less than two weeks earlier — the TCI Registrar had emailed the student body with the "Good News!" that registration had opened for the Fall 2017 Semester and that students should "[r]egister as soon as possible."

40.     The Department was notified of TCI's closure within a week. On September 8, 2017, the Department transferred TCI to "Stop Payment" status due to the school's closure, meaning that no further student aid funds could be disbursed to the school. On October 2, 2017, the Department published information about TCI's closure in its publicly available monthly closed school report.

41.     Despite learning of TCI's closure, the Department did not mail TCI borrowers a discharge application and an explanation of the qualifications and procedures for obtaining a discharge, as required by the Notice and Suspend Regulation.

42.     Despite learning of TCI's closure, the Department did not suspend collection, as required by the Notice and Suspend Regulation.

43.     The Department's failure to comply with the Notice and Suspend Regulation constitutes unlawfully withheld agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), and is arbitrary, capricious, an abuse of discretion, and not in accordance with the HEA and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

44.     On November 15, 2017, the New York Legal Assistance Group ("NYLAG"), counsel for Plaintiffs, sent a letter to the Department requesting that the Department "send[] information to all potentially eligible students about the availability of closed school discharge, as required by regulation." This letter is attached hereto as Exhibit 1.

45.     On November 30, 2017, NYLAG received an informal response via email from a staff member at the Department who stated that the Department was "looking into this issue."

46.     On June 26, 2018, NYLAG again wrote to the Department to "ask that [the Department] immediately identify all those TCI students potentially eligible for a closed school

discharge; mail closed school discharge applications to all such borrowers in order to make them aware of their right to seek a discharge of their federal student loans; and suspend collection efforts, as required by regulation." This letter is attached hereto as Exhibit 2.

47.     The letter further demanded that the Department respond within thirty days, and stated that if no such response was received, NYLAG would "consider [the Department] to have denied our request for administrative action, and . . . pursue all available remedies on behalf of our clients, including a possible legal action."

48.     The Department did not respond to, and thus denied, NYLAG's requests that it notify all potentially eligible TCI borrowers and suspend collection.

49.     The Department's denial of these requests was arbitrary, capricious, an abuse of discretion, and not in accordance with the HEA and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

50.     The Department did not send TCI borrowers a second application form, as required by the Second Notice Regulation that is now in effect retroactive to July 1, 2017.

51.     The Department's failure to comply with the Second Notice Regulation constitutes unlawfully withheld agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), and is arbitrary, capricious, an abuse of discretion, and not in accordance with the HEA and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

52.     On information and belief, up to a thousand TCI borrowers who are eligible for a closed school discharge are unaware of their ability to apply for this discharge because they have not been notified by the Department.

53.     Absent notice from the Department, virtually no federal student loan borrowers

are aware of the availability of a closed school discharge unless and until they consult with a financial counselor, attorney, or other expert.

54.     In 2014, an undersecretary at the Department stated that only six percent of eligible borrowers apply for a closed school discharge.

55.     NYLAG and other legal services organizations routinely assist clients who borrowed federal loans to attend a school that closed and are unaware of the availability of a discharge until receiving legal advice. *See, e.g.*, Comments from the Legal Aid Community to the U.S. Dep't of Educ. at 53 (Aug. 1, 2016), *available at* http://www.legalservicescenter.org/ wp-content/uploads/2016/08/2016.08.01-Legal-Aid-Comments-on-BD-NPRM.pdf.

56.     NYLAG has spoken to over two dozen TCI students who borrowed federal student loans and were attending TCI at the time it closed or within 120 days of closure. None have received a notice of closed school discharge eligibility from the Department.

57.     All but one of these students was unaware of the availability of closed school discharge before speaking with counsel. The one student who was aware of the availability of the discharge never received a notice from the Department but learned about the discharge when speaking on the phone with her loan servicer.

58.     The Department has itself acknowledged that most borrowers do not know of the availability of a closed school discharge. *See* 81 Fed. Reg. 39,330, 39,369 (June 16, 2016) ("The Department is concerned that borrowers are unaware of their possible eligibility for a closed school discharge because of insufficient outreach and information about available relief.").

59.     Indeed, borrowers' widespread lack of awareness about closed school discharge was the impetus for the Department's promulgation of the Second Notice Regulation as part of the 2016 Final Rule. *See id.*

60. After TCI closed, it filed for Chapter 7 bankruptcy, and the Bankruptcy Court subsequently sent a Notice of Possible Dividends to thousands of individuals, including many students who were enrolled in the school when it closed. *See* Not. of Possible Payment of Dividends, *In re Technical Career Institutes, Inc.*, No. 17-13232 (Bankr. S.D.N.Y.), ECF No. 25 (March 2, 2018). The Notice of Possible Dividends provided instructions for filing *pro se* proofs of claim in TCI's bankruptcy.

61. Upon receiving the Notice of Possible Dividends, many TCI students (including Mr. Quero, Mr. Francis, and Mr. Rodriguez) followed the instructions and submitted *pro se* proofs of claim. Many of these students' proofs of claim sought assistance with their federal student loan debt from TCI. These requests for relief from federal student loans are not valid bases for proofs of claim and are not cognizable in the bankruptcy proceedings.

62. Had these diligent students been provided with the notice and closed school discharge application required by federal regulation, however, they would have known that the appropriate avenue to seek relief from their federal loans would have been to apply for a closed school discharge.

63. On information and belief, had these students applied for a closed school discharge at the time they submitted their *pro se* proofs of claim, many would already have received a discharge of their loans.

64. Plaintiffs' counsel has spoken to many of the students who submitted *pro se* proofs of claim, including Mr. Quero, Mr. Francis, and Mr. Rodriguez, who were unaware of the availability of closed school discharge.

65. As a result of Defendant's failure to send notice of the availability of closed school discharge and suspend collection, Plaintiffs have experienced and continue to experience

financial and other harm.

66.     Plaintiffs face ongoing collection on their TCI loans and are obligated to make monthly payments on those loans.

67.     When Plaintiffs are unable to make monthly payments, their loans will become delinquent and, eventually, will default. Plaintiffs who default face the Department's extraordinary collection powers, including tax offset and wage garnishment, or litigation.

68.     Plaintiffs' credit is doubly damaged: all Plaintiffs' federal student loans borrowed to attend TCI are reported as outstanding debt, increasing Plaintiffs' reported total debt balance, and Plaintiffs who miss or fall behind on payments have further negative reporting associated with missed payments or delinquent accounts.

69.     After TCI's closure, other for-profit schools in the New York City area aggressively recruited former TCI students.

70.     For example, recruiters from ASA College, a for-profit two-year college in Brooklyn, began to call TCI students' cell phones. ASA College put up a special page on its website offering "TCI STUDENTS EASY TRANSFER TO ASA COLLEGE" with a "SPECIAL SCHOLARSHIP FOR TCI STUDENTS." Lured by this type of aggressive marketing techniques, many TCI students enrolled in programs of study at other for-profit schools.

71.     Many of the TCI students who enroll in other for-profit schools will not complete their programs of study, however, because these schools have very low completion rates. For example, the graduation rate at ASA College is twenty-six percent.

72.     Because the Department did not notify these students about the availability of closed school discharge, they could not "make an informed decision based on full knowledge of [their] options" about whether to transfer or apply for the discharge. *See* 81 Fed. Reg. 75,926,

76,034 (Nov. 1, 2016).

73.     On information and belief, many TCI students would not have transferred their

credits to other for-profit schools had they known that they could obtain a discharge of their TCI

loans instead of going into further debt to continue their programs of study.

74.     Unless and until they complete their program of study, these students remain

eligible to discharge their TCI loans.

## FACTUAL ALLEGATIONS REGARDING NAMED PLAINTIFFS

### *Christopher Quero*

75.     Plaintiff Christopher Quero is a thirty year old resident of the Bronx, New York.

76.     Mr. Quero enrolled in TCI's Facilities Management Technology Associate's

Degree program in the Spring of 2016 and obtained $20,000 in federal Direct Loans to finance

his TCI tuition and fees.

77.     Mr. Quero meets the requirements for closed school discharge in the Eligibility

Regulation.

78.     Mr. Quero was enrolled at TCI when it closed on September 1, 2017.

79.     Mr. Quero was unable to complete his program of study due to TCI's closure.

80.     Mr. Quero has not completed his program of study through a teach-out or by

transferring credits to another institution.

81.     Mr. Quero was never mailed notice of the availability of a closed school discharge

or the closed school discharge application.

82.     On information and belief, collection has never been suspended on the federal

student loans Mr. Quero borrowed to attend TCI.

83.     When Mr. Quero received the Notice of Possible Dividends, he filed a *pro se*

13

proof of claim in TCI's bankruptcy.

84. Mr. Quero was unaware of the availability of closed school discharge before speaking to counsel within the past month.

85. Mr. Quero has not yet applied for a closed school discharge.

86. Had Mr. Quero known about the availability of a closed school discharge earlier, he would have applied.

87. Mr. Quero's loans from TCI have a current outstanding balance of approximately $21,300, which includes $1,300 of accrued interest.

88. Mr. Quero's loans are currently in a temporary "forbearance" period during which Mr. Quero is not obligated to make any payments, but interest continues to accrue and his overall loan balance thus continues to increase. Mr. Quero placed his loans into forbearance due to his inability to make his monthly payments.

89. Mr. Quero's loans from TCI appear on his credit report.

***Courtney Francis***

90. Plaintiff Courtney Francis is a twenty-one year old resident of Brooklyn, New York.

91. Mr. Francis enrolled in TCI's Automotive Technology Associate's Degree program in the Fall of 2016 and obtained $5,500 in federal Direct Loans to finance his TCI tuition and fees.

92. Mr. Francis meets the requirements for closed school discharge in the Eligibility Regulation.

93. Mr. Francis was enrolled at TCI when it closed on September 1, 2017.

94. Mr. Francis was unable to complete his program of study due to TCI's closure.

95.     Mr. Francis has not completed his TCI program of study through a teach-out or by transferring credits to another institution.

96.     Mr. Francis is currently enrolled in an Associate's Degree program at the Borough of Manhattan Community College. Mr. Francis is not participating in a teach-out, and did not transfer any credits from TCI to his current school. Moreover, Mr. Francis's current program of study, Studio Art, is not the same as or comparable to his prior program of study, Automotive Technology.

97.     Mr. Francis was never mailed notice of the availability of closed school discharge or the closed school discharge application.

98.     On information and belief, collection has never been suspended on the federal student loans Mr. Francis borrowed to attend TCI.

99.     After TCI closed, Mr. Francis sought legal assistance in connection with his student loans, but he was unable to find an attorney that would help him.

100.    When Mr. Francis received the Notice of Possible Dividends, he filed a *pro se* proof of claim in TCI's bankruptcy, seeking a refund of money paid for "tuition for unfinished school year," i.e., his federal student loans.

101.    Mr. Francis was unaware of the availability of closed school discharge before speaking to counsel within the past month.

102.    Mr. Francis has not yet applied for a closed school discharge.

103.    Had Mr. Francis known about the availability of a closed school discharge earlier, he would have applied.

104.    Mr. Francis's loans from TCI have a current outstanding balance of approximately $5,630, which includes $130 of accrued interest.

105. Because Mr. Francis is currently in school, his TCI loans are in "in-school deferment," meaning that he is not required to make monthly payments but interest continues to accrue on some loans, and his overall loan balance thus continues to increase.

106. Mr. Francis's loans from TCI appear on his credit report.

*Kellin Rodriguez*

107. Plaintiff Kellin Rodriguez is a twenty-two year old resident of the Bronx, New York.

108. Mr. Rodriguez enrolled in TCI's Heating Ventilation and Air Conditioning Associate's Degree program in the Fall of 2015 and obtained $11,000 in federal Direct Loans to finance his TCI tuition and fees.

109. Mr. Rodriguez meets the requirements for closed school discharge in the Eligibility Regulation.

110. Mr. Rodriguez was enrolled at TCI when it closed on September 1, 2017.

111. Mr. Rodriguez was unable to complete his program of study due to TCI's closure.

112. Mr. Rodriguez has not completed his program of study through a teach-out or by transferring credits to another institution.

113. Mr. Rodriguez was never mailed notice of the availability of a closed school discharge or the closed school discharge application.

114. On information and belief, collection has never been suspended on the federal student loans Mr. Rodriguez borrowed to attend TCI.

115. When Mr. Rodriguez received the Notice of Possible Dividends, he filed a *pro se* proof of claim in TCI's bankruptcy, seeking a refund of $11,000 (the same amount of his federal student loans) for "money loaned."

116.     Mr. Rodriguez was unaware of the availability of closed school discharge before speaking to counsel within the past month.

117.     Mr. Rodriguez has not yet applied for a closed school discharge.

118.     Had Mr. Rodriguez known about the availability of a closed school discharge earlier, he would have applied.

119.     Mr. Rodriguez's loans from TCI have a current outstanding balance of approximately $11,280, which includes $280 of accrued interest.

120.     Mr. Rodriguez's loans are six months past due and are in "delinquent" status. Mr. Rodriguez owes a past-due balance of approximately $700 on his TCI loans.

121.     On information and belief, the delinquency on Mr. Rodriguez's TCI federal student loans appears on his credit report and has negatively impacted his credit score.

## CLASS ACTION ALLEGATIONS

122.     Plaintiffs bring this action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and a proposed class of:

> All Direct Loan borrowers who (and all parents who borrowed Direct Loans on behalf of students who) were enrolled at TCI when the school closed or withdrew from TCI not more than 120 days prior to the school's closure.

123.     The proposed class is so numerous that joinder of all members is impracticable. Upon information and belief, there approximately one thousand members of the proposed class.

124.     There are questions of fact common to members of the class including whether Defendant notified all eligible borrowers of the availability of closed school discharge and suspended collection.

125.     There are questions of law common to members of the class including whether Defendant unlawfully withheld agency action by failing to send notice to TCI borrowers of their

potential eligibility for closed school discharges and suspend collection of TCI borrowers' loans; whether Defendant acted and continues to act arbitrarily and capriciously, and in violation of the HEA and its implementing regulations, by failing to send notice to TCI borrowers of their potential eligibility for closed school discharges and  suspend collection of TCI borrowers' loans; and whether Defendant acted and continues to act arbitrarily and capriciously, and in violation of the HEA and its implementing regulations, by refusing to do the same upon request.

126.    The claims of the Named Plaintiffs are typical of the claims of all members of the proposed class. The Named Plaintiffs, like all members of the class, obtained federal Direct Loans in connection with attendance at TCI and were enrolled at TCI when it closed or within 120 days prior. The Named Plaintiffs, like the proposed class members, did not receive notice of their ability to apply for a closed school discharge and suspension of collection. Because of Defendant's failure to notify TCI borrowers of their potential eligibility for discharge and failure to suspend collection of TCI loans, the Named Plaintiffs have been subject to collection activity.

127.    The Named Plaintiffs will adequately and fairly protect the interests of all members of the proposed class because they have the requisite personal interest in the outcome of this litigation and have no interest antagonistic to any members of the class.

128.    Plaintiffs are represented by NYLAG, whose attorneys are experienced in class action litigation, including litigation to enforce the rights of consumers and, particularly, the rights of individuals with federal student loan debt.

129.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to the practices at issue in this action. Separate actions would be, as a practical matter, dispositive of the interests of other individual members of the class and would substantially impair their abilities to protect their

interests. Defendant has also acted on grounds generally applicable to the class, thereby making a class action superior to other available methods for the fair and efficient adjudication of this controversy.

130.     Moreover, it would be impracticable for potential plaintiffs, who are primarily low-income individuals with limited access to counsel, to obtain legal services on an individual basis for their claims. Hence their rights under the law may well be meaningless without certification of a class action seeking common redress.

## FIRST CAUSE OF ACTION
*Violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(1), 706(2)(A)*

131.     Defendant unlawfully withheld agency action, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), by failing to send notice to TCI borrowers of their potential eligibility for closed school discharges and by refusing to suspend collection of TCI borrowers' loans, as required by the Higher Education Act, 20 U.S.C. § 1071, *et seq.* and its implementing regulations, including 34 C.F.R. § 685.214(f)(1-3).

132.     Defendant abused her discretion, and acted and continues to act arbitrarily, capriciously and otherwise not in accordance with the Higher Education Act, 20 U.S.C. § 1071, *et seq.* and its implementing regulations, including 34 C.F.R. § 685.214(f)(1-3), in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), by failing to send notice to TCI borrowers of their potential eligibility for closed school discharges and by refusing to suspend collection of TCI borrowers' loans.

## SECOND CAUSE OF ACTION
*Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1)*

133.     Defendant abused her discretion, and acted and continues to act arbitrarily, capriciously and otherwise not in accordance with the Higher Education Act, 20 U.S.C. § 1071,

*et seq.* and its implementing regulations, including 34 C.F.R. § 685.214(f)(1-3), in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), by denying Plaintiffs' request to send notice to TCI borrowers of their potential eligibility for closed school discharges and suspend collection of TCI borrowers' loans.

### THIRD CAUSE OF ACTION
*Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), 706(2)(A)*

134.    Defendant unlawfully withheld agency action, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), by failing to send the second notice to TCI borrowers of their potential eligibility for closed school discharges, as required by the Higher Education Act, 20 U.S.C. § 1071, *et seq.* and its implementing regulations, including 34 C.F.R. § 685.214(f)(5).

135.    Defendant abused her discretion, and acted and continues to act arbitrarily, capriciously and otherwise not in accordance with the Higher Education Act, 20 U.S.C. § 1071, *et seq.* and its implementing regulations, including 34 C.F.R. § 685.214(f)(5), in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), by failing to send the second notice to TCI borrowers of their potential eligibility for closed school discharges.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

a.    Certifying this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, with the class consisting of:

> All Direct Loan borrowers who (and all parents who borrowed Direct Loans on behalf of students who) were enrolled at TCI when the school closed or withdrew from TCI not more than 120 days prior to the school's closure.

b.    Declaring that:

> i.    Defendant's failure to send notice to TCI borrowers of their potential eligibility for closed school discharges, and failure to suspend collection on their loans, was and continues to be unlawfully withheld agency action, and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the Higher

Education Act, 20 U.S.C. § 1071, *et seq.* and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(1), 706(A)(2);

ii. Defendant's denial of Plaintiffs' request to send notice to TCI borrowers of their potential eligibility for closed school discharges, and to suspend collection on their loans was and continues to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the Higher Education Act, 20 U.S.C. § 1071, *et seq.* and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A); and

iii. Defendant's failure to send a second notice to TCI borrowers of their potential eligibility for closed school discharges was and continues to be unlawfully withheld agency action, and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the Higher Education Act, 20 U.S.C. § 1071, *et seq.* and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(1), 706(A)(2).

c. Enjoining Defendant to:

i. Immediately suspend collection on all Direct Loans disbursed to class members in connection with their attendance at TCI, consistent with the HEA and 34 C.F.R. § 685.214(f)(1-3);

ii. Immediately send to all class members notice of their potential eligibility to apply for a closed school discharge of their TCI loans and the discharge application form, consistent with the HEA and 34 C.F.R. § 685.214(f)(1-3); and

iii. Subsequently send a second notice to all class members of their potential eligibility to apply for a closed school discharge of their TCI loans, consistent with the HEA and 34 C.F.R. § 685.214(f)(5).

d. Ordering Defendant to pay the cost of this action, together with reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(l)(A), as determined by the Court; and

e. Granting such other and further relief as the Court may deem just and proper.

Dated: October 17, 2018
New York, New York

Respectfully submitted,

BETH E. GOLDMAN, ESQ .
New York Legal Assistance Group
7 Hanover Square, 18th Floor
New York, NY 10004
Phone: 212-613-5000

By:    /s/ Danielle F. Tarantolo
       Danielle Tarantolo, of counsel
       Jane Greengold Stevens, of counsel
       Jessica Ranucci, of counsel
       *Attorneys for Plaintiffs*