UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CHRISTOPHER QUERO, COURTNEY
FRANCIS, and KELLIN RODRIGUEZ,
individually and on behalf of all persons
similarly situated,

               Plaintiffs,

   -v-

ELISABETH DEVOS, in her official capacity as
Secretary of the United States Department of
Education,

               Defendant.
------------------------------------------------------------ x

Case No. 18 Civ. 9509 (GBD)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-3274
Fax: (212) 637-2786

RACHAEL L. DOUD
Assistant United States Attorney
– Of Counsel –

Defendant Elisabeth DeVos, Secretary of the United States Department of Education (the "Department"), by her attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of her motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiffs Christopher Quero, Courtney Francis, and Kellin Rodriguez ("Plaintiffs") bring this putative class action, alleging that the Department violated the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), by failing to send notice to former students of the Technical Career Institutes, Inc. ("TCI") that they might be eligible for a "closed school discharge" of their student loans, as required by the Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq.* ("HEA"). Plaintiffs seek a declaration that the Department violated the APA by failing to send the required notice and injunctive relief directing it to do so. In fact, all but one of the federal loan servicers servicing loans for TCI students timely sent the required notice, and the remaining servicer sent the notice in late November. Accordingly, there is no live case or controversy to be heard by this Court, and the action should be dismissed for lack of subject matter jurisdiction.

## BACKGROUND

The HEA and its amendments authorize the William D. Ford Federal Direct Loan ("Direct Loan") Program, through which the Department lends money to eligible post-secondary students or their parents. *See* 20 U.S.C. § 1087a *et seq.* Pursuant to Department regulations, in the event a school closes, thereby preventing students from completing their programs, students, or parents of students who have taken out loans on students' accounts, are, if certain criteria are met, entitled to a closed school discharge of their loans. 34 C.F.R. § 685.214(c)(1)(i). A borrower must apply for a closed school discharge by submitting a written request. *Id.* § 685.214(c)(1).

The regulations require that, "[a]fter confirming the date of a school's closure, the [Department] identif[y] any Direct Loan borrower (or student on whose behalf a parent borrowed) who appears to have been enrolled at the school on the school closure date or to have withdrawn not more than 120 days prior to the closure date," and "mail[] the borrower a discharge application and an explanation of the qualifications and procedures for obtaining a discharge." 34 C.F.R. § 685.214(f)(1)-(3). Additionally, the Department must "promptly suspend[] any efforts to collect from the borrower on any affected loan" for sixty days. *Id.* § 685.214(f)(2), (4). If the sixty-day period of suspension ends and the borrower has not submitted an application, the Department may resume collecting upon the borrower's loan. *Id.* § 685.214(f)(4).

The Department contracts with federal loan servicers ("Servicers") to service loans provided pursuant to the Direct Loan Program. (*See generally* Declaration of Christian Lee Odom dated February 8, 2019 ("Odom Decl.") ¶ 5.) Once the Department becomes aware that a school has closed, it provides that information to the Servicers. (*Id.*) The Servicers are then contractually obligated to identify all Direct Loan borrowers who were in attendance at the educational institution within 120 days of its closure, and send them a closed school discharge application and explanation of the qualifications and procedures for obtaining a closed school discharge ("Application and Instructions"). (*Id.*) Servicers are also required to suspend collection on any affected loan for borrowers thus identified for 60 days, unless the borrower's loan is in "grace status," and thus not currently subject to collection. (*Id.*)

On November 1, 2016, the Department issued a final rule promulgating regulations providing that, where a borrower has not submitted a discharge application, "[u]pon resuming collection" at the end of the 60-day suspension period, the Department must provide the

2

borrower with "another discharge application and an explanation of the requirements and procedures for obtaining a discharge." 34 C.F.R. §685.214(f)(5) (the "Final Rule"). The Final Rule was scheduled to become effective on July 1, 2017, but was stayed by the Department. *See* 81 Fed. Reg. 75,926. On September 17, 2018, the District Court for the District of Columbia vacated the stay, but stayed the vacatur until October 12, 2018. *See Bauer v. DeVos*, 332 F. Supp. 3d 181, 186 (D.D.C. 2018). On October 12, 2018, the court extended the stay until October 16, 2018. *Bauer*, October 12, 2018 Minute Order. The Department is in the process of implementing contractual changes requiring all Servicers to comply with this requirement. (Odom Decl. ¶ 7.)

On September 1, 2017, TCI, a for-profit college in Manhattan, closed. (Compl. ¶ 1; Odom Decl. ¶ 8.) Plaintiffs allege that, "[d]espite learning of TCI's closure, the Department did not mail TCI borrowers a discharge application and an explanation of the qualifications and procedures for obtaining a discharge, as required by the [regulations]." (Compl. ¶ 41.) In addition, each of the named plaintiffs alleges that he enrolled in TCI and obtained Direct Loans to finance his tuition and that he met the requirements for school discharge, but that he was not provided notice of the availability of a closed school discharge or the closed school discharge application. (*Id.* ¶¶ 76-81, 91-97, 108-113.)

In fact, however, with one exception, the Servicers servicing the loans of former TCI students promptly complied with Education's requirement to identify, among borrowers whose loans they service, borrowers who were in attendance at TCI within 120 days of its September 1, 2017 closure. (Odom Decl. ¶ 8.) Those Servicers sent the identified borrowers Applications and Instructions, and, where applicable, suspended collection efforts on affected loans for those students for 60 days. (*Id.*) Those Servicers included PHEAA/FedLoan Servicing, the Servicer

who services Plaintiff Kellin Rodriguez's loans, and EdFinancialServices, the Servicer who serviced Plaintiff Courtney Francis's loans. (*Id.* ¶¶ 12-13.)

According to Department records, PHEAA/FedLoan sent an Application and Instructions to Mr. Rodriguez on or about October 6, 2017. (Odom Decl. ¶ 12 & Ex. A.) Because Mr. Rodriguez had elected to receive electronic correspondence, he received the materials via his online student loan account portal, with an email to the account he had provided to alert him to the fact that official correspondence from the Department was available on the portal. (*Id.* & Ex. E.) Because Mr. Rodriguez's loans were in grace status, and thus not subject to collection, a 60-day suspension of collection was not needed. (Odom Decl. ¶ 12.)

EdFinancial Services sent an Application and Instructions to Mr. Francis on or about October 3, 2017. (Odom Decl. ¶ 13 & Ex. B.) Because Mr. Francis had elected to receive electronic correspondence, he also received the materials via his online student loan account portal, with an email to the account he had provided to alert him to the fact that official correspondence from the Department was available on the portal. (*Id.* ¶ 13 & Ex. F.) Mr. Francis's loans were in grace status, so a 60-day suspension of collection was not needed. (*Id.* ¶ 13.) Mr. Francis submitted a closed school discharge application on October 30, 2018. (*Id.* & Ex. C) Mr. Francis's application was approved, and the affected loans discharged, on or about December 1, 2018. (*Id.*)

Education became aware of non-compliance by one of the TCI Servicers, Oklahoma Student Loan Assistance ("OSLA"), during a routine offsite monitoring. (Odom Decl. ¶ 9.) On or about November 20, 2018, Education requested that OSLA implement a Corrective Action Plan to ensure that it is adhering to regulatory and contractual requirements on a going-forward basis. (*Id.* ¶ 10.) Additionally, Education instructed OSLA to send an Application and

4

Instructions to all potentially eligible TCI borrowers, and to suspend collection on any affected loans. (*Id.*) OSLA did so on or about November 27, 2018. (*Id.* ¶ 11.)

Plaintiff Christopher Quero's loans were serviced by OSLA. (Odom Decl. ¶ 14.) While OSLA did not initially send Mr. Quero an Application and Instructions, as required, Mr. Quero submitted a closed school discharge application to Education on or about November 6, 2018. (*Id.*) On or about December 4, 2018 the application was approved, and Mr. Quero's loans were discharged. (*Id.* & Ex. D)

Plaintiffs allege that the Department unlawfully withheld agency action, abused its discretion, and acted arbitrarily and capriciously and not in accordance with the HEA and its implementing regulations, in violation of the APA, by "failing to send notice to TCI borrowers of their potential eligibility for closed school discharges and by refusing to suspend collection of TCI borrowers' loans, as required by the Higher Education Act . . . and its implementing regulations." (Compl. ¶¶ 131-32.) Plaintiffs also allege that the Department abused its discretion and acted arbitrarily and capriciously and not in accordance with the HEA, in violation of the APA, by failing to take these same measures after Plaintiffs' counsel sent letters demanding it do so. (*Id.* ¶ 133.) Finally, Plaintiffs allege that the Department unlawfully withheld agency action, abused its discretion, and acted arbitrarily and capriciously and not in accordance with law, in violation of the APA, by "failing to send the second notice to TCI borrowers of their potential eligibility for closed school discharges, as required by the Higher Education Act . . . and its implementing regulations." (*Id.* ¶¶ 134-35.)

Plaintiffs bring suit on behalf of a proposed class of "[a]ll Direct Loan borrowers who (and all parents who borrowed Direct Loans on behalf of students who) were enrolled at TCI when the school closed or withdrew from TCI not more than 120 days prior to the school's

closure." (Compl. ¶ 122.) Plaintiffs seek a declaration that the Department violated the APA by failing to send notice to TCI borrowers of their potential eligibility for a discharge and suspend collection on their loans, and by failing to send a second notice. (*Id.* at 20-21.) Additionally, Plaintiffs seek an injunction requiring the Department to send notice and immediately suspend collection on Direct Loans to putative class members and to subsequently send a second notice. (*Id.* at 21.)

## ARGUMENT

### I. LEGAL STANDARDS

#### A. Legal Standard for a Rule 12(b)(1) Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). In considering a motion to dismiss pursuant to Rule 12(b)(1), the Court "generally must accept the material factual allegations in the complaint as true," but "does not . . . draw all reasonable inferences in the plaintiff's favor." *S.E.C. v. Rorech*, 673 F. Supp. 2d 217, 221 (S.D.N.Y. 2009). The Court may also consider evidence extrinsic to the pleadings. *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002).

#### B. Standing Doctrine

To establish standing, a party must demonstrate "(1) *injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied

by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The alleged injury in fact must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted).  To seek injunctive relief, a party must "establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.*

### C. Mootness Doctrine

Under Article III of the Constitution, federal courts are limited to "the adjudication of actual, ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988).  As recognized by the Second Circuit, "[m]ootness is a jurisdictional matter" relating to Article III's mandate that "federal courts hear only 'cases' or 'controversies.'" *Blackwater v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989) (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).  Federal courts cannot "give opinions upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).  Therefore, a claim should be dismissed as moot when "the parties have no 'legally cognizable interest' or practical 'personal stake' in the dispute, and the court is therefore incapable of granting a judgment that will affect the legal rights as between the parties." *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 94 (2d Cir. 2007).

## II. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF JURISDICTION

### A. Plaintiffs Francis, Rodriguez and Other Non-OSLA Students Timely Received the Required Notice, and Therefore Lack Standing

As discussed above, all TCI Servicers other than OSLA promptly sent Applications and Instructions, as required. Francis and Rodriguez's loans were serviced by those Servicers, and Department records show that their Servicers sent them the required notice in early October 2017. (Odom Decl. ¶¶ 12-13.) To the extent Plaintiffs challenge the Servicers' failure to send a second notice 60 days later, that allegation is meritless, because the regulation requiring a second notice had not yet gone into effect. Specifically, the regulation Plaintiffs rely on did not go into effect until October 16, 2018, one day before Plaintiffs filed this lawsuit, and the Department has been working with the Servicers to put it into effect. (*Id.* ¶ 7.)

Accordingly, these plaintiffs cannot establish an injury-in-fact redressable by the Court, as required to establish standing. *See W.R. Huff Asset Mgmt. Co.*, 549 F.3d at 106.

### B. The Claims of Plaintiff Quero and Other OSLA Students Are Moot

While Quero and the other TCI students whose loans were serviced by OSLA did not receive Applications and Instructions promptly after TCI's closure, as required, OSLA has now sent Applications and Instructions to former TCI students. (Odom Decl. ¶ 11.) Additionally, despite having not yet received an Application and Instructions, Quero submitted a closed school discharge application to the Department on or about November 6, 2018, and his loans have been discharged. (*Id.* ¶ 14.)

Plaintiffs request two forms of relief: a declaratory judgment declaring that the Department's failure to send the required notice to TCI borrowers violated the APA, and injunctive relief requiring the Department to send notice. Because Quero's loans have been discharged and OSLA has now sent the required notice to former TCI students, neither form of

relief is available to Quero or to other putative class members whose loans are serviced by OSLA. *See generally John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11 Civ. 5453 (CM), 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) ("[D]eclaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved."). Accordingly, these plaintiffs' claims are moot. *See ABN Amro Verzekeringen BV, Inc.*, 485 F.3d at 94. Plaintiffs' allegations regarding the alleged failure to send a second notice also lacks merit with respect to OSLA, because the new regulation went into effect only one day before Plaintiffs filed suit and OSLA had not yet sent the first notice.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiffs' Complaint.

Dated: February 8, 2019
        New York, New York

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York
                              *Attorney for the Defendant*

By:   /s/ Rachael L. Doud
        RACHAEL L. DOUD
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.: (212) 637-3274
        Fax: (212) 637-2786
        E-mail: rachael.doud@usdoj.gov