UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CHRISTOPHER QUERO, COURTNEY
FRANCIS, and KELLIN RODRIGUEZ,
individually and on behalf of all persons
similarly situated,

              Plaintiffs,

  -v-

ELISABETH DEVOS, in her official capacity as
Secretary of the United States Department of
Education,

             Defendant.
------------------------------------------------------------ x

Case No. 18 Civ. 9509 (GBD)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-3274
Fax: (212) 637-2786

RACHAEL L. DOUD
Assistant United States Attorney
– Of Counsel –

Defendant Elisabeth DeVos, Secretary of the United States Department of Education (the "Department"), by her attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of her motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

In their complaint ("Complaint" or "Compl."), Plaintiffs Christopher Quero, Courtney Francis, and Kellin Rodriguez ("Plaintiffs") allege that the Department violated the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), by failing to provide notice to former students of the Technical Career Institutes, Inc. ("TCI"), after it closed in September 2017, that they might be eligible for a "closed school discharge" of their student loans, as required by the Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq.* ("HEA"). As explained in Defendant's memorandum in support of her motion to dismiss ("Opening Br."), all but one of the federal loan servicers servicing loans for TCI students in fact timely sent the required notice, and the remaining servicer sent the notice in November. Accordingly, Mr. Francis and Mr. Rodriguez—whose servicers provided them notice shortly after TCI closed—did not suffer the injury they allege and therefore lack standing, while the claims of Mr. Quero—whose servicer provided notice to the students whose loans it services in November and who had already applied for a discharge of his loans—are moot.

In their opposition to Defendant's motion to dismiss ("Opposition"), Plaintiffs shift focus to new theories. Instead of arguing that the Department failed to send notice of potential eligibility for discharge to TCI students, as alleged in the Complaint, Plaintiffs now contend that the notice provided to certain students was insufficient. Specifically, Plaintiffs allege that, despite the fact that Mr. Francis and Mr. Rodriguez elected to receive electronic correspondence,

their servicers were not permitted to provide notice by that means, because Mr. Francis and Mr. Rodriguez never activated their online accounts in order to retrieve that correspondence, as instructed in numerous emails from their servicers. With respect to Mr. Quero, Plaintiffs now appear to argue that his servicer should have sent him a notice informing him that he might be eligible for a discharge of his loans even though he had already applied for a discharge, which he has now received. Plaintiff's new claims are entirely absent from the Complaint, however, and Plaintiffs cannot amend their complaint through their opposition to a motion to dismiss. *See, e.g.*, *Williams v. Rosenblatt Sec. Inc.*, 14 Civ. 4390 (JGK), 2016 WL 4120654, at *5 (S.D.N.Y. July 22, 2016). At any rate, the Department, through its loan servicers, took reasonable measures to provide notice to former students of TCI that they might be eligible for discharge of their loans, and thereby satisfied its obligations under the HEA.

Plaintiffs also contend that the Department violated the APA because the loan servicers servicing the loans of former TCI students did not send a second notice to those students sixty days after the first notice. However, there was no basis for the servicers to do so, because the regulation that now requires servicers to send a second notice did not go into effect until October 16, 2018—a year *after* the servicers should supposedly have sent the second notice.

Accordingly, there is no live case or controversy to be tried by the Court, and the Complaint should be dismissed.

## ARGUMENT

### PLAINTIFFS' OPPOSITION DOES NOT ALTER THE CONCLUSION THAT THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF JURISDICTION

#### A. Plaintiffs Francis, Rodriguez and Other Non-OSLA Students Timely Received the Required Notice, and Therefore Lack Standing

In the Complaint, Plaintiffs purport to bring suit on behalf of a putative class of "[a]ll Direct Loan borrowers who (and all parents who borrowed Direct Loans on behalf of students

who) were enrolled at TCI when the school closed or withdrew from TCI not more than 120 days prior to the school's closure"—*i.e.*, would potentially be eligible for discharge of their student loans. (Compl. ¶ 122.) Plaintiffs allege that the Department violated the APA by "failing to send notice to TCI borrowers of their potential eligibility for closed school discharges and by refusing to suspend collection of TCI borrowers' loans, as required by the Higher Education Act . . . and its implementing regulations." (*Id.* ¶¶ 131-32.) The Complaint seeks a declaratory judgment that the Department violated the APA and injunctive relief requiring it to send notice to former TCI students and immediately suspend collection on their loans. (*Id.* at 21.)

As explained in Defendant's Opening Brief, all but one servicer servicing the loans of former TCI students (Oklahoma Student Loan Association ("OSLA")) provided the required notice to the students whose loans they serviced shortly after TCI closed, and suspended collection on those loans for sixty days, as required. (Opening Br. at 3-5; Declaration of Christian Lee Odom dated February 8, 2019 ("Odom Decl.") ¶ 8.) Those servicers included EdFinancialServices ("EdFinancial"), the servicer that serviced Plaintiff Courtney Francis's loans, and PHEAA/FedLoan Servicing ("FedLoan"), the servicer that serviced Plaintiff Kellin Rodriguez's loans. (Opening Br. at 3-4; Odom Decl. ¶¶ 12-13.)[1] Because these servicers in fact provided notice to Mr. Francis, Mr. Rodriguez, and the other students whose loans they serviced, and suspended collection on their loans, those students did not suffer the harm alleged in the Complaint, and there is no live case or controversy to be tried by this Court. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-107 (2d Cir. 2008) (to establish standing, a plaintiff must demonstrate harm to a legally protected interest that is caused by the

---

[1] Mr. Francis's loans were discharged on or about December 1, 2018, while Mr. Rodriguez's loans were discharged on or about March 5, 2019. (Declaration of Chad Keller in Further Support of Defendant's Motion to Dismiss, dated April 25, 2019 ("Keller Decl.") ¶¶ 12, 18.)

3

alleged actions of the defendant and would be redressed by the requested relief).

In their Opposition, Plaintiffs assert a new claim—that although all loan servicers other than OSLA provided notice to former TCI students, in some cases they did so in an insufficient manner. Specifically, Plaintiffs allege that the notice provided to Mr. Francis, Mr. Rodriguez, and some other TCI students was inadequate because, although they elected to receive electronic correspondence, they never activated their online accounts with their servicers and thus did not actually view the correspondence (Opp. at 1, 12.)[2] Plaintiffs argue that, because Mr. Francis and Mr. Rodriguez purportedly suffered harm arising from the method by which the loan servicers provided notice, they have standing. (*Id.* at 10-12.) This argument fails.

First, while Plaintiffs describe their challenge to the method by which loan servicers provided notice to certain students as "the fundamental merits dispute in this case" (Opp. at 12), that challenge is not so much as referenced in the Complaint, which instead asserts that the Department simply did not send notice to, or suspend collection on the loans of, *any* former TCI students. (*Compare* Compl. ¶ 6 (alleging that the Department "fail[ed] and refus[ed] to send notices and suspend collection" as to all potentially eligible former TCI students).) Further evidencing Plaintiffs' departure from the allegations in their Complaint, their new theory aligns with neither their proposed class—consisting of all former TCI students who would potentially be eligible for discharge of their loans (Compl. at 20), or their requested relief—an injunction requiring the Department to send notice to all former TCI students (*id.* at 21). Accordingly, the Complaint did not "give the defendant fair notice of the nature of" this new claim and "the grounds upon which it rests," as required. *See Washington v. James*, 782 F.2d 1134, 1140 (2d

---

[2] Plaintiffs do not appear to challenge the notice provided by mail to former TCI students who did not elect to receive electronic correspondence (*see* Keller Decl. ¶ 6), or the notice provided to students who elected to receive electronic correspondence and activated their accounts.

4

Cir. 1986). Further, Plaintiffs cannot amend their Complaint to add this new claim through their opposition to the motion to dismiss. *Williams*, 2016 WL 4120654, at *5.

Second, the loan servicers' provision of notice to Mr. Rodriguez and Mr. Francis—and other students who elected to receive electronic correspondence—comports with the HEA. As discussed in Defendant's Opening Brief, because Mr. Francis and Mr. Rodriguez elected to receive electronic correspondence, that was the means by which their servicers provided them notice. (Opening Br. at 4.) Specifically, on September 14, 2016, Mr. Francis elected to receive electronic correspondence. (Keller Decl. ¶ 7 & Odom Decl. Ex. F.)[3] When making this election, Mr. Francis was presented with terms and conditions that stated that they "describe[d] how the U.S. Department of Education (ED) and its agents and contractors, *including your federal loan . . . servicer(s)* ('we'), deliver correspondence associated with your federal student loan(s)," and selected the option providing, "I want to receive my correspondence from the U.S. Department of Education *and my federal loan . . . servicer[]* **by e-mail**." (Keller Decl. Ex. B at 52, 54 (italics added; other emphasis in original).)[4] On October 12, 2016, after the Department assigned Mr. Francis's loan to EdFinancial for servicing, EdFinancial sent him a letter informing him that his loans had been assigned to EdFinancial and directing him to EdFinancial's website, where he could set up and manage his account. (*Id.* ¶ 8 & Exs. C & D.) On October 20, 2016, Mr. Francis received an email from EdFinancial instructing him on how to set up his online account. (*Id.* ¶ 9

---

[3] In response to requests from Plaintiffs, Defendant voluntarily provided Plaintiffs with documents and information concerning these issues, despite the fact that discovery had not yet begun. After filing the motion to dismiss, Defendant agreed to provide Plaintiffs with additional documents for use in responding to the motion, and Plaintiffs agreed to provide limited discovery in return. At the initial conference, the Court so-ordered the parties' agreed upon schedule. (February 21, 2019, Minute Entry.)

[4] Plaintiffs, presumably inadvertently, quote from the prior version of the policy. (*Compare* Opp. at 16 (citing Ranucci Decl. Ex. F at DOE 0050, 59 (old language)); *with* Ranucci Decl. Ex. F at DOE 0052 (new language).)

& Ex. E.) On or about October 3, 2017, shortly after TCI closed, EdFinancial posted a letter to Mr. Francis's online account, informing him that he might be eligible for a discharge of his loans, and sent him an email informing him that there was a new message in his account and he should log in to view it. (*Id.* ¶ 10 & Exs. F-H.)[5]

Similarly, Mr. Rodriguez elected to receive electronic correspondence on August 29, 2014. (Keller Decl. ¶ 13 & Ex. I.) When making this election, Mr. Rodriguez was presented with terms and conditions that stated that they "describe[d] how the U.S. Department of Education (ED) and its agents and contractors, *including your federal loan servicer* ('we'), deliver correspondence associated with your federal student loans to you electronically," and selected the option providing, "I want to receive electronic correspondence from the U.S. Department of Education *and my federal loan servicer(s)*." (*Id.* Ex. A at DOE 0034, 40 (emphasis added).)[6] On September 10, 2014, after the Department assigned Mr. Rodriguez's loans to FedLoan for servicing, FedLoan sent him a letter explaining that his loans had been assigned to FedLoan, and suggesting that he set up an online account. (*Id.* ¶ 14 & Ex. J.) On June 16, 2015, FedLoan sent Mr. Rodriguez an email stating:

> You indicated on StudentLoans.gov that you want to receive communications about your student loan account electronically. Starting today, we will send billing, tax, and account status information to your Paperless Inbox in Account Access. Whenever we place new information in your Paperless Inbox, we will notify you by email.

(*Id.* ¶ 15 & Ex. K.) On October 6, 2017, shortly after TCI closed, FedLoan posted a letter to Mr.

---

[5] While Plaintiffs assert that Mr. Francis and Mr. Rodriguez searched their accounts and did not find emails from their servicers from those precise dates (Opp. at 7 n.4), they make no representations about whether they may have deleted the emails; do not dispute that the servicers' records show that those emails were sent to them; and themselves produced to Defendant numerous other emails that instructed them that there were messages in their online accounts that they should log on to view. (Ranucci Decl. (Dkt. No. 26) Exs. H-J.)

[6] Plaintiffs again quote the wrong language, this time citing to a page that is not included in the exhibit they cite. (*See* Opp. at 16 (citing Ranucci Decl. Ex. E at DOE 0050).)

Rodriguez's online account, informing him that he might be eligible for a discharge of his loans, and an email informing him that there was "an important message about [his] loans and/or grants" in his account. (*Id.* ¶ 16 & Exs. L-N.)

The HEA's implementing regulations require that, "[a]fter confirming the date of a school's closure, the [Department] identif[y] any Direct Loan borrower (or student on whose behalf a parent borrowed) who appears to have been enrolled at the school on the school closure date or to have withdrawn not more than 120 days prior to the closure date," and "mail[] the borrower a discharge application and an explanation of the qualifications and procedures for obtaining a discharge." 34 C.F.R. § 685.214(f)(1)-(3). Additionally, the Department must "promptly suspend[] any efforts to collect from the borrower on any affected loan" for sixty days. *Id.* § 685.214(f)(2), (4). The Department carries out these requirements through federal loan servicers, with whom it contracts. (Odom Decl. ¶ 5; Keller Dec. ¶ 4.)

Plaintiffs do not appear to argue that these regulations require servicers to send a paper copy of such notice by traditional mail in all instances. (*See* Opp. at 17.) Instead, the crux of the theory they assert for the first time in their Opposition is that, because Mr. Francis and Mr. Rodriguez did not follow the instructions provided in the emails they received notifying them that there were messages in their online accounts and they should log on to retrieve them, the notice was not sufficient under the HEA and its implementing regulations. (Opp. at 6; 12.)[7]

---

[7] Plaintiffs also argue that Mr. Francis and Mr. Rodriguez's elections to receive electronic correspondence should not be credited, because they made the elections with the Department, while the subsequent electronic correspondence was sent by their servicers. (Opp. at 15.) However, the elections Mr. Francis and Mr. Rodriguez made specifically stated that they wanted to receive electronic correspondence from the Department *and* their federal loan servicers, and the terms and conditions they were presented with likewise stated that the e-correspondence policy applied to correspondence from both the Department and loan servicers. (*See supra* at 5, 7; Keller Decl. Exs. A & B.) Further, Mr. Francis and Mr. Rodriguez received numerous emails from their servicers that explicitly state that the servicers were providing notices to them

7

However, those regulations require the Department to send notice—not to affirmatively verify that each student has actually viewed it. The servicers' method of providing notice was reasonable in light of the fact that Mr. Francis and Rodriguez affirmatively elected to receive communications electronically. *See generally Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 74-75 (2d Cir. 2017) (in contract setting, even "where there is no evidence that the [party] had actual notice . . . [the party] will still be bound . . . if a reasonably prudent user would be on inquiry notice").[8]

Finally, while Plaintiffs contend that "[t]he Second Circuit, in *Salazar v. King*, 822 F.3d 61 (2d Cir. 2016), recently found standing in circumstances almost identical to those here" (Opp. at 11), the circumstances in *Salazar* differ from those at issue here in key respects. In *Salazar*, the plaintiffs, former students of certain beauty schools, contended that the schools falsely certified that they had an ability to benefit from the education they received there, as required by the HEA. Plaintiffs alleged that the Department violated a regulation that requires it to suspend collection of student loans where it has reliable information that a school made such false certifications, and notify students that they might be eligible for discharge of their loans. Unlike in this case, where the loan servicers in fact provided notice to former TCI students of their potential eligibility for discharge, in *Salazar* the Department undisputedly did not provide any such notice to students of Wilfred, because it took the position that such notice was not required. *Id.* at 71. In the portion of the opinion Plaintiffs cite, the court held that the named plaintiffs'

---

electronically, as opposed to by traditional mail. (*Id.* ¶¶ 9, 15 & Exs. C, I.)

[8] Plaintiffs contend that this case is analogous to *Jones v. Flowers*, 547 U.S. 220, 226 (2006), in which the Court held that the Government had not provided adequate notice to a tax debtor whose property it seized and sold when it sent him letters that were returned to sender. Unlike in that case, where the recipient had no possible way to receive a letter that had been returned to the Government, the messages explaining to Mr. Francis and Mr. Rodriguez that their loans might be eligible for discharge were available in their online accounts, where they continued to have access to them. Further, because, unlike the plaintiff in Jones, the Government has not taken their property, constitutional due process standards are not applicable.

claims were not moot even though their loans had been discharged, due to the "inherently transitory" nature of their claims and the fact that, because notice was not provided to any former students, there were other class members whose injuries would be redressed by the requested relief. *Id.* at 72-73. Here, by contrast, the servicers have provided notice to former TCI students of their potential eligibility for discharge. Because this is precisely the remedy Plaintiffs seek in this lawsuit, there is no live case or controversy. *W.R. Huff Asset Mgmt. Co.*, 549 F.3d at 106.

### B. The Claims of Plaintiff Quero and Other OSLA Students Are Moot

As discussed in Defendant's Opening Brief, while Quero and the other TCI students whose loans were serviced by OSLA did not receive notice that their loans might be eligible for discharge promptly after TCI's closure, OSLA sent the required notice in November. (Odom Decl. ¶ 11.) OSLA did not send Mr. Quero the notice because he had already applied for discharge, which he has now received. (Keller Decl. ¶¶ 20-21.) Because OSLA students have now received the relief sought in the Complaint—notice of potential eligibility for discharge—their claims are moot. *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 94 (2d Cir. 2007).[9]

In their Opposition, Plaintiff's misconstrue Defendant's argument, suggesting that Defendant's contention that Mr. Quero's claims are moot is based solely on the fact that his loans have now been discharged. (Opp. at 18-19.) Instead, as explained in Defendant's Opening Brief, the claims of Mr. Quero and other OSLA students are moot because OSLA has now provided the required notice, and the students have therefore received the relief sought in the

---

[9] While the Complaint also seeks a declaratory judgment that the Department violated the APA, declaratory relief is not available where only past conduct is involved. *See John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11 Civ. 5453 (CM), 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) ("[There is no basis for declaratory relief where only past acts are involved.").

Complaint. To the extent Plaintiffs argue that Mr. Quero's claims are not moot because OSLA did not send him notice, that argument ignores that OSLA did not do so only because he had already applied for a discharge and thus was clearly aware of his potential eligibility. (Keller Decl. ¶ 20.) Again, this case differs from *Salazar*, on which Plaintiffs rely, because neither Mr. Quero, nor any other OSLA student, has a live case or controversy.

### C. Plaintiffs' Claims Based on the Department's Alleged Failure to Send a Second Notice Fail

Finally, Plaintiffs claim that the Department violated the APA because, when TCI closed, the servicers failed to comply with a regulatory provision requiring the Department to send a second notice sixty days after the first. Plaintiffs do not meaningfully respond to the point that the provision did not go into effect until October 16, 2018—more than a year after all servicers other than OSLA provided the first notice. (Odom Decl. ¶ 7.) In light of that fact, the servicers would have had no basis to provide a second notice sixty days after they provided the first notice, and Plaintiffs have provided no support for the proposition that Defendants were required to send second notices to schools that had closed in the past once the new regulation went into effect.[10]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiffs' Complaint.

---

[10] The regulation was originally scheduled to go into effect on July 1, 2017, but the Department stayed it. The District Court for the District of Columbia vacated that stay effective October 16, 2018. *Bauer v. DeVos*, 332 F. Supp. 3d 181 (D.D.C. 2018). While the Department has implemented portions of the regulation—for example, concerning the standard applicable to borrower defense to repayment applications, which it now applies to loans disbursed on or after July 1, 2017—retroactive to that date, that approach makes no sense in the context of provisions like the second notice requirement, that by their terms are fixed to a particular point in time. OSLA—the only school to send the first notice to TCI students after the new regulation went into effect—sent the second notice on or about February 22, 2019. (Keller Decl. ¶ 19.)

Dated: April 25, 2019
New York, New York

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney for the
        Southern District of New York
        *Attorney for the Defendant*

By:   /s/ Rachael L. Doud
        RACHAEL L. DOUD
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.: (212) 637-3274
        Fax: (212) 637-2786
        E-mail: rachael.doud@usdoj.gov