UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\- x

CHRISTOPHER QUERO, COURTNEY
FRANCIS, and KELLIN RODRIGUEZ,
individually and on behalf of all persons
similarly situated,

                  Plaintiffs,

      -v-

ELISABETH DEVOS, in her official capacity as
Secretary of the United States Department of
Education,

                 Defendant.

Case No. 18 Civ. 9509 (GBD)

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\- x

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR FEES

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-3274
Fax: (212) 637-2786

RACHAEL L. DOUD
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................3

ARGUMENT.....................................................................................................................10

    I.      LEGAL STANDARD...............................................................................................10

    II.     PLAINTIFF'S MOTION FOR FEES SHOULD BE DENIED...................................11

        A.  The Department's Pre-Litigation Position Was Substantially Justified ................11

        B.  The Department Position in this Litigation Substantially Justified .......................20

CONCLUSION...................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Bauer v. DeVos*,
  332 F. Supp. 3d 181 (D.D.C. 2018) ................................................................. 4, 20

*Blackwater v. Safnauer*,
  866 F.2d 548, 550 (2d Cir. 1989) ......................................................................... 6

*Boudin v. Thomas*,
  732 F.2d 1107 (2d Cir. 1984) ............................................................................ 11

*Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human*,
  *Res.*, 532 U.S. 598 (2001) ................................................................................ 10

*Cohen v. Bowen*,
  837 F.2d 582 (2d Cir. 1988) ....................................................................... 11, 16

*Commissioner, I.N.S. v. Jean*,
  496 U.S. 154 (1990) ........................................................................................... 12

*Ellender v. Schweiker*,
  No. 82 Civ. 4816 (IBC), 1984 WL 158 (S.D.N.Y. Apr. 2, 1984) ..................... 11

*El Shahat v. Astrue*,
  No. 11 Civ. 04690 (CM) (DF), 2013 WL 6497386 (S.D.N.Y. Dec. 2, 2013) ......... 14

*Environmental Defense Fund, Inc. v. Watt*,
  554 F. Supp. 36 (E.D.N.Y. 1983) ...................................................................... 18

*Firstland Int'l, Inc. v. U.S. I.N.S.*,
  2006 WL 436011 (E.D.N.Y. Feb. 22, 2006) ..................................................... 11

*Kirkland v. R.R. Retirement Bd.*,
  706 F.2d 99 (2d Cir. 1983) ................................................................. 11, 13, 22

*Loumiet v. Office of Comptroller of Currency*,
  650 F.3d 796 (D.C. Cir. 2011) ........................................................................... 14

*Marshall v. Comm'r of Soc. Sec.*,
  444 F.3d 837 (6th Cir. 2006) ............................................................................. 14

*Mazzochi v. Windsor Owners Corp.*,
  Case No. 11 Civ. 7913(AT), 2013 WL 5295089 (S.D.N.Y. Sept. 17, 2013) ........... 6

*Megna v. Biocomp Laboratories Inc.*,
  225 F. Supp. 3d 222 (S.D.N.Y. 2016) ............................................................... 10

*Meyer v. Uber Tech., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ................................................................................. 17

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ..................................................................................... *passim*

*Roanoke River Basin Ass'n v. Hudson*,
  991 F.2d 132 ....................................................................................................... 12

*Roberson v. Giuliani*,
  346 F.3d 75 (2d Cir.2003) ............................................................................ 10, 12

*Salazar v. King*,
  822 F. 3d 61 (2d Cir. 2016) .............................................................. 3, 20, 21, 23

*Sotelo-Aquije v. Slattery*,
  62 F.3d 54 (2d Cir.1995) .................................................................................... 11

*Vacchio v. Ashcroft*,
    404 F.3d 663 (2d Cir. 2005)................................................................... 16
*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)................................................................... 23

**Statutes**

5 U.S.C. §§ 701-706 .................................................................................. 1
15 U.S.C. § 7001(c)(1)........................................................................... 8, 15
20 U.S.C. § 1001 ....................................................................................... 1
20 U.S.C. § 1087a ..................................................................................... 3
28 U.S.C. § 2412 ....................................................................................... 1
28 U.S.C. § 2412(d)(1)(A)..................................................................... 2, 10

**Rules**

Federal Rule of Civil Procedure 37(a)(4) ................................................. 14
Federal Rule of Civil Procedure 37(b)(2)(E) ........................................... 14

**Regulations**

34 C.F.R. § 685.214(c)(1)(i) ...................................................................... 3
34 C.F.R. § 685.214(f) ............................................................................. 19
34 C.F.R. § 685.214(f)(1)-(3) ............................................................... 3, 22
34 C.F.R. § 685.214(f)(2)(4) ..................................................................... 4

**Other Authorities**

H.R. Rep. No. 96–1418, 96th Cong., 2d. Sess., 10-11 (1980).................... 11

Defendant Elisabeth DeVos, Secretary of the United States Department of Education (the "Department"), by her attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in opposition to Plaintiffs' motion for attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

## PRELIMINARY STATEMENT

In this case, Plaintiffs Christopher Quero, Courtney Francis, and Kellin Rodriguez ("Plaintiffs") brought a putative class action alleging that the Department violated the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), by failing to provide notice to former students of the Technical Career Institutes, Inc. ("TCI"), after it closed in September 2017, that they might be eligible for a "closed school discharge" of their student loans, and suspending collection on their loans, as required by the Higher Education Act of 1965, 20 U.S.C. § 1001 et seq. ("HEA"), and Department regulations.  Because all but one of the federal loan servicers servicing loans of TCI students in fact timely sent the required notice and suspended collection on students' loans, and the remaining servicer sent the notice in November 2018, shortly after Plaintiffs filed suit, Defendant moved to dismiss Plaintiffs' complaint.  In opposing Defendant's motion to dismiss, Plaintiffs developed a new theory:  that in instances where the Department (or the loan servicers with whom it contracted) had provided notice of potential eligibility for discharge to students by electronic means—rather than by traditional mail—that method of notice was insufficient, even though those students had elected to receive electronic correspondence.  While the Court denied Defendant's motion to dismiss, it did not make any finding as to the appropriateness of the Department's methods of providing notice, but instead determined that it would not decide the issue at that time.  The parties subsequently settled the

case, and Plaintiffs now move for attorney's fees under the EAJA.

An award of fees under the EAJA is not justified anytime a party prevails in a case, much less anytime a case settles.  Instead, the EAJA provides for the award of fees to a prevailing party only when the position of the United States was not "substantially justified."  28 U.S.C. § 2412(d)(1)(A).  Here, both Defendant's position on the underlying action—*i.e.*, the provision of notice to former TCI students—and Defendant's conduct in the litigation, were substantially justified.  With respect to the underlying conduct, the Department did not, as Plaintiffs allege in their complaint, fail to send notice of potential eligibility for discharge to former TCI students when the school closed.  Instead, with the exception of one servicer, the loan servicers servicing the loans of TCI students timely provided such notice by a mix of electronic means—to students who had elected to receive electronic correspondence—and traditional mail—to students who had not.  It was appropriate for the Department to provide notice by electronic means to students who had elected to receive electronic correspondence; indeed, even Plaintiffs do not dispute that a requirement to provide written notice may be satisfied by electronic means where an election has been made.  With respect to the one servicer that did not timely provide notice to TCI students, moreover, the Department remedied the issue independent of Plaintiffs' lawsuit, before Defendant had even answered Plaintiffs' complaint.  Given this fact, the delay in one out of eleven servicers providing notice does not justify any award of fees, much less for the entire lawsuit.

Finally, it was reasonable for Defendant to move to dismiss after determining that the circumstances on which Plaintiffs premised their standing in the case—*i.e.*, the alleged failure of the Department to send notice to any former TCI students of their potential eligibility for discharge and suspend collection on their loans—had not occurred.  This case does not, as

Plaintiffs contend, involve the same situation addressed in *Salazar v. King*, 822 F. 3d 61 (2d Cir. 2016).  In that case, it was undisputed that the Department did not provide notice of potential eligibility for discharge to students of the school at issue because it took the position that such notice was not required, and the Department argued that the plaintiffs' appeal was moot because the loans of all named plaintiffs had been discharged.  *Id.* at 72-74.  Defendant has never made that argument in this case (even though the loans of the named plaintiffs have all been discharged), and nothing in the Second Circuit's opinion suggests that the plaintiffs in *Salazar* would have had standing even if they had received notice of their potential eligibility for discharge—the situation that was at issue in this case.

For the foregoing reasons, Plaintiffs' motion for fees should be denied.

## BACKGROUND

As described in more detail in Defendant's motion to dismiss briefing (Dkt Nos. 20-22), the Department carries out the William D. Ford Federal Direct Loan ("Direct Loan") Program, through which it lends money to eligible post-secondary students or their parents.  *See* 20 U.S.C. § 1087a *et seq.*  Pursuant to Department regulations, in the event a school closes, thereby preventing students from completing their programs, students, or parents of students who have taken out loans on students' accounts, may, upon submitting an application, be entitled to a closed school discharge of their loans.  34 C.F.R. § 685.214(c)(1)(i).  The regulations require that, "[a]fter confirming the date of a school's closure, the [Department] identif[y] any Direct Loan borrower (or student on whose behalf a parent borrowed) who appears to have been enrolled at the school on the school closure date or to have withdrawn not more than 120 days prior to the closure date"—*i.e.*, that might be eligible for discharge—and "mail[] the borrower a discharge application and an explanation of the qualifications and procedures for obtaining a discharge."  34 C.F.R. § 685.214(f)(1)-(3).  Additionally, the Department must "promptly

suspend[] any efforts to collect from the borrower on any affected loan" for sixty days.  *Id.* § 685.214(f)(2), (4).

On October 17, 2018, Plaintiffs brought suit on behalf of three named plaintiffs and a proposed class consisting of all students of TCI, a for-profit college in Manhattan that closed on September 1, 2017, as well as any parents who took out loans on behalf of students, who might be eligible for discharge of their loans.  (Complaint (Dkt. No. 1) ("Compl.") ¶ 122.)  Plaintiffs alleged that, when TCI closed, "the Department did not mail the application form to Plaintiffs or suspend collection on their loans" and that "[a]s a result of the Department's failure and refusal to send notices and suspend collection, members of the putative class remain unaware of the availability of a closed school discharge and are subject to ongoing collection on their TCI loans."  (Compl. ¶¶ 4, 6.)  The complaint did not say anything about the manner in which the Department provided notice to TCI students—it simply alleged that the Department had "fail[ed] and refus[ed]" to provide such notice to any former TCI students, or to suspend collection on their loans.  The complaint also alleged that the Department had failed to send a second round of notices sixty days after the first—even though the regulation requiring the Department to do so was stayed at the point TCI closed and did not go into effect until one day before Plaintiffs filed suit.  *See Bauer v. DeVos*, 332 F. Supp. 3d 181, 186 (D.D.C. 2018); *Bauer v. DeVos*, Case No. 17-1330 (RDM), October 12, 2018 Minute Entry.  Plaintiffs sought a declaratory judgment that, by failing to provide the required notice to former TCI students and suspend collection on their loans, the Department had violated the HEA, and injunctive relief requiring the Department to send such notices and suspend collection accordingly.  (Compl. Prayer for Relief.)

Contrary to what Plaintiffs' alleged, with the exception of one loan servicer, the loan servicers that serviced the loans of TCI students had, in fact, timely sent notice of potential

eligibility for discharge, along with applications and instructions, to former students of TCI, and suspended collection on their loans.   (Odom Declaration in Support of Motion to Dismiss ("Odom Decl.") (Dkt. No. 22) ¶ 8.)  In accordance with their general practice, the servicers had sent such notice by a mix of electronic means—where the student had elected to receive electronic correspondence—and traditional mail—where the student had not.  (*Id.* ¶¶ 12-13; Declaration of Chad Keller in Further Support of Defendant's Motion to Dismiss ("Keller Decl.") (Dkt. No. 30) ¶¶ 5-6.)  One loan servicer, Oklahoma Student Loan Assistance ("OSLA"), did not timely send such notices.  (Odom Decl. ¶ 9.)  Prior to the date Plaintiffs filed suit in this case, however, the Department discovered during a routine offsite monitoring that OSLA had failed to send the notices, and instructed it to do so.  (Odom Decl. ¶ 9; Declaration of Lisa Tessitore in Opposition to Plaintiffs' Motion for Fees ("Tessitore Decl.") ¶¶ 12-13.)  On or about November 20, 2018, Education requested that OSLA implement a formal Corrective Action Plan to ensure that it was adhering to regulatory and contractual requirements on a going-forward basis, and OSLA sent the required notices, applications and instructions on or about November 27, 2018.  (Odom Decl. ¶ 10; Tessitore Decl. ¶¶ 14-15.)

Because, with respect to servicers other than OSLA, Plaintiffs' complaint was based on the false premise that the Department had failed to notify any former TCI students of their potential eligibility for discharge or suspend collection on their loans, and because OSLA had, by that point, remedied its prior failure to do so, on February 8, 2019, Defendant moved to dismiss Plaintiff's complaint.  (Dkt. Nos. 20-22.)  Defendant argued that students whose loans were serviced by servicers other than OSLA lacked standing, because they had not suffered the injury in fact alleged in the complaint, and that the claims of students whose loans were serviced by OSLA were moot because, by that point, they had been sent notice unless they had already

applied for a discharge.  (Dkt. No. 21 at 8-9.)  While these issues overlapped with the merits of

Plaintiffs' case, the Department sought to resolve them at the outset of the case because standing

and mootness are "jurisdictional matter[s]" relating to Article III's mandate that "federal courts

hear only 'cases' or 'controversies," *Blackwater v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989),

and should, when possible, be resolved on a motion to dismiss with reference to extrinsic

evidence, *see, e.g.*, *Mazzochi v. Windsor Owners Corp.*, Case No. 11 Civ. 7913 (AT), 2013 WL

5295089, at *5 (S.D.N.Y. Sept. 17, 2013).

Defendant also argued that, for the same reasons applicable to the class as a whole,

named plaintiffs Kellin Rodriguez and Courtney Francis lacked standing, while the claims of the

third named plaintiff, Christopher Quero, were moot.   First, Courtney Francis's loans were

serviced by EdFinancial Services, which sent him notice of his potential eligibility for discharge,

along with an application and instructions, on or about October 3, 2017.  (Odom Decl. ¶ 13 &

Ex. B.)  Because Mr. Francis had elected to receive electronic correspondence, he received the

materials via his online student loan account portal, with an email to the account he had provided

to alert him to the fact that official correspondence from the Department was available on the

portal.  (*Id.* ¶ 13 & Ex. F.)[1]  Mr. Francis's loans were in grace status, so a 60-day suspension of

collection was not needed.  (*Id.* ¶ 13.)

---

[1] Specifically, as detailed in Defendant's reply brief in support Defendant's motion to dismiss
(Dkt. No. 29) and the accompanying declaration of Chad Keller (Dkt. No. 30), Mr. Francis
elected to receive electronic correspondence on September 14, 2016. (Keller Decl. ¶ 7 & Odom
Decl. Ex. F.)  When making this election, Mr. Francis was presented with terms and conditions
that stated that they "describe[d] how the U.S. Department of Education (ED) and its agents and
contractors, including your federal loan . . . servicer(s) ('we'), deliver correspondence associated
with your federal student loan(s)," and selected the option providing, "I want to receive my
correspondence from the U.S. Department of Education and my federal loan . . . servicer[] **by e-
mail**." (Keller Decl. Ex. B at DOE 0052, 0054 (emphasis in original).)  On October 12, 2016,
after the Department assigned Mr. Francis's loan to EdFinancial for servicing, EdFinancial sent
him a letter informing him that his loans had been assigned to EdFinancial and directing him to

Kellin Rodriguez's loans were serviced by PHEAA/FedLoan, which sent him notice of his potential eligibility for discharge, along with an application and instructions, on or about October 6, 2017.  (Odom Decl. ¶ 12 & Ex. A.)   Because Mr. Rodriguez had elected to receive electronic correspondence, he received the materials via his online student loan account portal, with an email to the account he had provided to alert him to the fact that official correspondence from the Department was available on the portal.  (*Id.* & Ex. E.)[2]   Because Mr. Rodriguez's loans were in grace status, and thus not subject to collection, a 60-day suspension of collection was not needed.  (Odom Decl. ¶ 12.)

---

EdFinancial's website, where he could set up and manage his account. (*Id.* ¶ 8 & Exs. C & D.) On October 20, 2016, Mr. Francis received an email from EdFinancial instructing him on how to set up his online account. (*Id.* ¶ 9 & Ex. E.)  On or about October 3, 2017, shortly after TCI closed, EdFinancial posted a letter to Mr. Francis's online account, informing him that he might be eligible for a discharge of his loans, and sent him an email informing him that there was a new message in his account and he should log in to view it. (*Id.* ¶ 10 & Exs. F-H.)

[2] As detailed in Defendant's reply brief in support Defendant's motion to dismiss (Dkt. No. 29) and the accompanying declaration of Chad Keller (Dkt. No. 30), Mr. Rodriguez elected to receive electronic correspondence on August 29, 2014. (Keller Decl. ¶ 13 & Ex. I.) When making this election, Mr. Rodriguez was presented with terms and conditions that stated that they "describe[d] how the U.S. Department of Education (ED) and its agents and contractors, including your federal loan servicer ('we'), deliver correspondence associated with your federal student loans to you electronically," and selected the option providing, "I want to receive electronic correspondence from the U.S. Department of Education and my federal loan servicer(s)." (*Id.* Ex. A at DOE 0034, 40.)  On September 10, 2014, after the Department assigned Mr. Rodriguez's loans to FedLoan for servicing, FedLoan sent him a letter explaining that his loans had been assigned to FedLoan, and suggesting that he set up an online account. (*Id.* ¶ 14 & Ex. J.)  On June 16, 2015, FedLoan sent Mr. Rodriguez an email stating:

> You indicated on StudentLoans.gov that you want to receive communications about your student loan account electronically. Starting today, we will send billing, tax, and account status information to your Paperless Inbox in Account Access. Whenever we place new information in your Paperless Inbox, we will notify you by email.

(*Id.* ¶ 15 & Ex. K.) On October 6, 2017, shortly after TCI closed, FedLoan posted a letter to Mr. Rodriguez's online account, informing him that he might be eligible for a discharge of his loans, and sent him an email informing him that there was "an important message about [his] loans and/or grants" in his account.  (*Id.* ¶ 16 & Exs. L-N.)

7

Plaintiff Christopher Quero's loans were serviced by OSLA.  (Odom Decl. ¶ 14.)  While OSLA did not initially send Mr. Quero a notice of his potential eligibility for discharge as required, Mr. Quero submitted a closed school discharge application to Education on or about November 6, 2018.  (*Id.*)  While OSLA sent former TCI students notice of their potential eligibility for discharge on or about November 27, 2018, it did not send such a notice to Mr. Quero because he had already submitted an application for discharge.  (*Id.* ¶¶ 11, 14.)  On or about December 4, 2018 the application was approved, and Mr. Quero's loans were discharged.  (*Id.* ¶ 14 & Ex. D.)

On April 11, 2019, Plaintiffs filed their Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Opposition" or "Opp.") (Dkt. No. 25).  In their Opposition, Plaintiffs developed a new theory of liability—that although the loan servicers had sent notice of potential eligibility for discharge to former TCI students, in some cases the method by which they did so was insufficient.  (Opp. at 13-18.)  Specifically, while they acknowledged that electronic notice may suffice to satisfy the requirement that the Department "mail" students notice of their potential eligibility for discharge (*see* Opp. at 17 (citing E-Sign Act, 15 U.S.C. § 7001(c)(1)), and did not dispute that plaintiffs Rodriguez and Francis elected to receive electronic correspondence, they argued that the notice provided to Rodriguez and Francis was insufficient because the election was made on the Department's website, and because Rodriguez and Francis did not activate their online accounts with their servicers despite receiving repeated notifications that they were receiving communications there and needed to activate their accounts to view them.  (*See* Opp. at 13-18; *see also* Defendant's Reply Br. (Dkt. No. 29) at 5-7 (describing communications to Rodriguez and Francis).)

On May 23, 2019, the Court heard oral argument on Defendant's motion to dismiss and

denied it from the bench.  (May 23, 2019, Dkt. Entry.)  The Court did not make any finding as to the appropriateness of the Department's methods for providing notice, but concluded that the issue could not appropriately be resolved based on standing or mootness.

The parties subsequently entered into an agreement to settle the case.  (*See* Dkt. No. 44-1.)  In the settlement agreement, the parties agreed to the certification of a class solely for purposes of settlement.  (*Id.* ¶ 2.)  Defendant agreed to mail former students of TCI (or where applicable, their parents) who had not yet applied for discharge of their loans a notice that they might be eligible for discharge, along with an application and instructions, to suspend collection on their loans for sixty days, and to send a second notice ninety days after the first notice to students who had not yet applied for discharge.  (*Id.* ¶¶ 3-5.)  Because the case was a putative class action, and the settlement agreement would resolve the claims of all class members, the settlement agreement also provided for notice to class members of the settlement, in accordance with Rule 23(c)(2).  (*Id.* ¶ 3(a)-(b) (referencing Exhibit C, notice to class members).)  Specifically, Defendant agreed to include with its first round of mailings a letter from Plaintiffs' counsel informing class members of the settlement, and to send the same letter by email to those class members who had elected to receive electronic correspondence, or for whom it had email addresses.  (*Id.*)[3]  As part of the settlement agreement, Defendant did not make any admission that the procedures it had previously employed to provide notice to TCI students were inadequate.  Defendant also reserved the right to oppose any motion for fees Plaintiffs might subsequently make.  (*Id.* ¶ 10.)

_____

[3] While Plaintiffs state in their motion that the Department agreed to mail and email two rounds of notice to former TCI students (Dkt. No. 47 ("Mem.") at 1) that is not accurate—the Department agreed to send one email to each student who elected to receive electronic correspondence or for whom the Department has an email address attaching the letter from Plaintiffs' counsel alerting them to the class action settlement.  (Dkt. No. 44-1 ¶ 3(b).)

On December 17, 2019, the Court approved the settlement agreement.  (Dkt. No. 45.)  On

March 16, 2020, Plaintiffs filed their motion, seeking $38,248.37 in attorney's fees and costs,

plus fees and costs for their motion for attorneys' fees.  (Dkt. Nos. 46-48.)

## ARGUMENT

## I.   LEGAL STANDARD

Section 2412(d)(1)(A) provides that:

> [A] court shall award to a prevailing party other than the United States fees and other
> expenses ... incurred by that party in any civil action ... including proceedings for judicial
> review of agency action, brought by or against the United States in any court having
> jurisdiction of that action, unless the court finds that the position of the United States was
> substantially justified or that special circumstances make an award unjust.

"[I]n order to be considered a 'prevailing party' . . . , a plaintiff must not only achieve some

material alteration of the legal relationship of the parties, but that change must also be judicially

sanctioned."  *Roberson v. Giuliani,* 346 F.3d 75, 79 (2d Cir. 2003) (internal quotation marks

omitted); *see also Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and*

*Human Res.,* 532 U.S. 598, 604-05 (2001).  That is, plaintiffs are only eligible for attorney's fees if

they "achieve some material alteration of the legal relationship" between them and their

adversaries, *and* that change bears a "judicial imprimatur."  *Roberson,* 346 F.3d at 79-80 (internal

quotation marks omitted); *see also Megna v. Biocomp Labs. Inc.*, 225 F. Supp. 3d 222, 224

(S.D.N.Y. 2016) ("A party is the prevailing party in the litigation if there is a judicially sanctioned

change in the legal relationship of the parties favoring it, including an enforceable judgmen[t] on

the merits or a court-ordered consent decre[e]." (internal quotation  marks omitted) (alterations in

original)).

The government's actions are substantially justified if those actions are "justified to a degree

that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  To

prevail on this issue, the Government must show that the underlying agency action and its position

in the ensuing litigation were reasonable.  *See Sotelo-Aquije v. Slattery*, 62 F.3d 54, 57 (2d Cir.

1995).  Even where the government loses the underlying case, however, that does not raise a

presumption that the Government's actions were unreasonable.  *Cohen v. Bowen*, 837 F.2d 582, 585

(2d Cir. 1988); *see also Firstland Int'l, Inc. v. U.S. I.N.S.*, No. 02-CV-4043 (ARR), 2006 WL

436011, at *6 (E.D.N.Y. Feb. 22, 2006), *aff'd in part, rev'd in part and remanded on other

grounds*, 264 F. App'x 22 (2d Cir. 2008) (A "court's evaluation of whether the government's

position in a given matter was substantially justified is entirely distinct from its prior decision on

the merits of the case.").  "Nor . . . does the standard require the Government to establish that its

decision to litigate was based on a substantial probability of prevailing."  *Ellender v. Schweiker*,

No. 82 Civ. 4816 (IBC), 1984 WL 158, at *5 (S.D.N.Y. Apr. 12, 1984) (quoting H.R. Rep. No. 96–

1418, 96th Cong., 2d. Sess., 10-11 (1980)).  Instead, the EAJA "protects the government when its

case, though not prevailing, has a reasonable basis in law and fact."  *Cohen*, 837 F.2d at 585

(quoting H.R. Rep. No. 96–1418, 96th Cong., 2d. Sess., 14 (1980)); *see also Boudin v. Thomas*, 732

F.2d 1107, 1115-17 (2d Cir. 1984) (for purposes of the EAJA, the question is whether the

government's interpretation of the law was plausible); *Kirkland v. R.R. Retirement Bd.*, 706 F.2d

99, 105 (2d Cir. 1983) (fee award inappropriate where Government's position, "although erroneous,

was not . . . devoid of legal or factual support").

## II.   PLAINTIFFS' MOTION FOR FEES SHOULD BE DENIED

### A.  The Department's Pre-Litigation Position Was Substantially Justified

Contrary to the allegations in Plaintiffs' complaint, with one exception (OSLA) all eleven

servicers servicing the loans of TCI students timely sent notice to those students of their potential

eligibility for discharge of their loans and suspended collection on their loans.  *See supra* at 4-5.

In the case of OSLA, the Department discovered during routine offset monitoring, which examined

11

Closed School Discharge processing for each servicer and was conducted between December 2017 and September 2018, that, despite prior representations to the contrary, OSLA had failed to send the required notices to TCI students. (Tessitore Decl. ¶ 12.) The Department promptly took action to address the issue, and OSLA sent the required notices and applications to borrowers who had attended TCI in November 2018. (*Id.* ¶¶ 13-15.)

The Department's conduct was substantially justified. First, to the extent Plaintiffs attempt to rely on OSLA's delay in sending notices to justify a fee award they do not even qualify as prevailing parties, because they did not "achieve some material alteration of the legal relationship" on this issue as a result of the litigation that bears a "judicial imprimatur," *Roberson,* 346 F.3d at 79-80 (internal quotation marks omitted). Indeed, the Department was already taking measures to remedy OSLA's failure to send the notices at the point Plaintiffs filed suit, resulting in the notices being sent shortly thereafter and before Defendant had responded to Plaintiffs' complaint, so Plaintiffs' lawsuit did not even cause the relief that was provided with respect to this issue. At any rate, in light of the fact that only one out of eleven servicers failed to timely send notice; OSLA misrepresented that it had done so; and the Department nevertheless determined that it hadn't and remedied the issue, the Department's conduct was "justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565. It would be absurd for one deficiency—which was remedied voluntarily when the Department became aware of the issue—to justify a fee award for an entire litigation focused on other issues. *See generally Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 161-62 (1990) ("Any given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."); *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 140 (4th Cir. 1993) (applying *Jean* to

determine that the district court "did not err in considering the Corps' position in the entire case and . . . finding that that position was not rendered unreasonable by . . . two deficiencies").  Notably, the Department never took the position that OSLA did not have to send notices to former TCI students.

Plaintiffs are also mistaken that the Department's manner of providing notice more generally was not substantially justified.  As discussed above, where students did not elect to receive electronic correspondence they were sent notice and applications by traditional mail.  Plaintiffs do not appear to dispute that notice was appropriately provided to such students.  Where students did elect to receive electronic correspondence (including in the case of plaintiffs Francis and Rodriguez), they were provided notice by that means.  This approach comports with the Department's obligations under the HEA and Department regulations.  In any event, whether the Department would have prevailed on the merits of that issue had the case been fully litigated is not the issue before the Court.  Instead, Plaintiffs are entitled to attorney's fees only if the Government's position, even if "erroneous" was "devoid of legal or factual support."  *Kirkland*, 706 F.2d at 105.  The Government's method of providing notice does not meet that standard.

As an initial matter, Plaintiffs attempt to argue that they must necessarily win on this issue unless Defendant produces "a full administrative record as to the entire Class."  (Mem. at 14.)  The cases Plaintiffs cite do not support this proposition.  In the portion of *Pierce v. Underwood*, 487 U.S. 552, that Plaintiffs selectively quote, the Court discussed the meaning of the term "substantially justified," because the parties disputed what it meant, with respondents contending that it meant "a high standard."  *Id.* at 564-65.  In looking for "guidance" as to the meaning of the term, the Court noted that "substantial evidence," as used in the APA, "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* at 565 (internal

quotation marks omitted). The Court also analogized to the term "substantially justified," as

used in Federal Rules of Civil Procedure 37(a)(4) and (b)(2)(E), which "has never been

described as meaning justified to a high degree, but rather has been said to be satisfied if there is

a genuine dispute." *Id.* (internal quotation marks omitted). There is nothing in the Court's

opinion to suggest that a plaintiff is automatically entitled to fees in any case asserting an APA

claim unless the government produces a "full administrative record." The opinion also directly

contradicts Plaintiffs assertion that the burden of showing substantial justification is "high"

(Mem. at 14). *See Pierce*, 487 U.S. at 565 ("substantially justified . . . has never been described

as meaning justified to a high degree").[4]

Here, where Plaintiffs initially alleged that the Department failed to send any notices and

subsequently challenged the manner by which servicers provided notice to certain students, there

is no pre-compiled "full administrative record as to the entire Class" (Mem. at 14). While it is

not entirely clear what Plaintiffs mean by that term, they appear to suggest that they are entitled

to fees unless Defendant produces documentation showing how notice was provided to each

putative class member. Plaintiffs themselves have only ever made specific factual assertions

---

[4] The other cases Plaintiffs cite in a footnote also do not support the proposition that Defendant cannot prevail without "producing a full administrative record as to the entire Class" (Mem. at 14). In *Loumiet v. Office of Comptroller of Currency*, 650 F.3d 796, 799 (D.C. Cir. 2011), and *Marshall v. Comm'r of Soc. Sec.*, 444 F.3d 837, 843 (6th Cir. 2006), the plaintiffs sought fees incurred in connection with administrative proceedings before administrative law judges. In referring to the "administrative record," the courts were simply referring to the record that the administrative law judges had reviewed in deciding the matter. In *El Shahat v. Astrue*, No. 11 Civ. 04690 (CM) (DF), 2013 WL 6487386, at \*5 (S.D.N.Y. Dec. 2, 2013), a social security appeal, the court denied the plaintiff's request that the defendant be required to file a certified administrative record and simply noted that it might be in the Commissioner's interest to file such a record if he chose to oppose a motion for attorney's fees. Again, the "administrative record" simply referred to the record on which the administrative judge had based his or her decision.

about the alleged deficiency regarding the notice provided to the named plaintiffs, however, and never identified any other individuals who they contend did not receive notice.  Defendant already produced discovery concerning the manner by which the named plaintiffs elected to receive electronic correspondence and received notice, as well as more general information about the Department's practices as a whole.  (*See generally* Odom Decl. and attachments; Keller Decl. and attachments; Tessitore Decl. and attachments.)  This record—the record that was before the Court in this case—is amply sufficient to demonstrate that Defendant's approach was "justified to a degree that could satisfy a reasonable person."  *Pierce*, 487 U.S. at 565.

With regard to the substance of their argument, Plaintiffs acknowledge that an obligation to provide something in writing—here, the obligation to "mail" students information concerning their potential eligibility for discharge of their loans—may be satisfied by electronic means, as long as the consumer has provided informed consent.  *See* Mem. at 17 (citing E-Sign Act, 15 U.S.C. § 7001(c)(1)).  That is exactly what occurred here—Plaintiffs were provided a "clear and conspicuous statement" explaining the scope of the consent they were providing, *id.*, and elected to receive electronic correspondence.

Plaintiffs' argument to the contrary relies on the erroneous contention (which they make without citing anything) that the electronic correspondence elections made by Francis and Rodriguez "on their face covered only the studentloans.gov website."  (Mem. at 17.)  That is simply not the case.  When making the election, Francis was presented with terms and conditions that stated that they "describe[d] how the U.S. Department of Education (ED) *and its agents and contractors, including your federal loan . . . servicer(s) ('we'), deliver correspondence associated with your federal student loan(s)*," and selected the option providing, "I want to receive my correspondence from the U.S. Department of Education *and my federal loan . . .*

servicer[] *by e-mail*." (Keller Decl. Ex. B at DOE 0052, 0054 (italics added; other emphasis in original).) Similarly, when making the election, Rodriguez was presented with terms and conditions that stated that they "describe[d] how the U.S. Department of Education (ED) *and its agents and contractors, including your federal loan servicer ('we'), deliver correspondence associated with your federal student loans to you electronically*," and selected the option providing, "I want to receive electronic correspondence from the U.S. Department of Education *and my federal loan servicer(s)*." (Keller Deck. Ex. A at DOE 0034, 40 (emphasis added).) These elections make crystal clear that the student was electing to receive electronic correspondence from both the Department and his or her loan servicer.

Having made these elections, Francis and Rodriguez should have expected to receive electronic communications from their loan servicers. Further, Francis and Rodriguez were both informed at the point their loans were assigned to servicers and instructed on how to set up online accounts to access information they would be receiving from their servicers via those accounts. (Keller Decl. ¶¶ 8-9, 14-15 & Exs. C, D, E, J & K).) When their servicers posted letters in their online accounts informing them that they might be eligible for discharge of their loans and providing applications, the servicers sent Francis and Rodriguez emails (to the email addresses they had provided) informing them that there were messages in their accounts that they should log on to view. (*Id.* ¶¶ 10, 16 & Exs. F-H, L-N.) That Francis and Rodriguez chose not to heed any of this information does not render this manner of providing notice inadequate. At the very least, this approach had "a reasonable basis in . . . law and fact"—which is all that is required to make a fee award improper. *Cohen*, 837 F.2d at 585; *see also Vacchio v. Ashcroft*, 404 F.3d 663, 675, 677 (2d Cir. 2005) (holding that "the issue is far from settled law, the [g]overnment's legal argument is far from unreasonable, and it thus cannot be said that the

[g]overnment's position on the question is not substantially justified," where the government relied on a "viable, but far from compelling legal theory" ).

The applicable regulations require the Department to send notice—not to affirmatively verify that each student has actually viewed it.  Francis and Rodriguez affirmatively elected to receive communications electronically, and consistent with those elections, were notified that they had received communications in their online accounts and would need to activate those accounts to view them.  While Plaintiffs appear to argue that the Department had an obligation to verify that each student had activated his or her online account in order for their servicer to send communications to that account, this interpretation finds no support in the regulations and established principals of inquiry notice.  *See generally Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 74-75 (2d Cir. 2017) (in contract setting, even "[w]here there is no evidence that the [party] had actual notice . . . [the party] will still be bound . . . if a reasonably prudent user would be on inquiry notice").[5]  In any event, it was reasonable for the Department to conclude that, where students had affirmatively elected to receive electronic correspondence and were instructed to activate their online accounts, communications could be sent to them by those means.

Plaintiffs also contend that the settlement agreement the parties entered into "strongly supports a finding that the Government's pre-litigation position was not substantially justified." (Mem. at 18.)  The fact that Defendant chose to settle the case does not, in itself, suggest that the

---

[5] While Plaintiffs contend that "[t]he Department's placement of Notices in online accounts that it knows the borrower never created is equivalent to deliberately mailing the Notices to addresses the Department *knows* to be invalid" (Mem. at 17), that is not the case.  While borrowers would have no way to access communications deliberately sent to the wrong mailing address, the servicers sent emails to the borrowers at the email addresses they provided instructing them to set up their online accounts to access important messages, and the borrowers could have set up those accounts and accessed the messages at any point.  Plaintiffs' argument also ignores the reality that it is not feasible for the Department to monitor whether every student has set up an online account each time a communication is sent.

Department's position was not substantially justified, however. *See Pierce*, 487 U.S. at 568 (stating that, even where terms of settlement were "unfavorable," that could not, "without inquiry into the reasons for settlement, . . . conclusively establish the weakness of the Government's position" and "[t]o hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements"). It is also not the case, as Plaintiffs claim, that the settlement "provides essentially all relief sought by the class in the Complaint" (Mem. at 18). The complaint sought two categories of relief: (i) injunctive relief requiring the Department to mail notices to TCI borrowers; and (ii) and a declaratory judgment declaring that the Department's conduct violated the APA. Compl. Prayer for Relief. The settlement agreement did not include any admission of fault by the Department, and thus did not provide Plaintiffs with a substantial component of the relief sought in their complaint. That the Department elected to send mailings over continuing to litigate a class action involving hundreds of class members does not demonstrate that the Department's position was not substantially justified. This case is not similar to the Eastern District of New York case Plaintiffs cite, in which the settlement agreement established that certain requirements with which the defendant previously failed to comply were applicable. *See Environmental Defense Fund, Inc. v. Watt*, 554 F. Supp. 36, 41 (E.D.N.Y.), *aff'd* 772 F.2d 1081 (2d Cir. 1983). Defendant has in no way conceded that its method of providing notice was improper—it simply elected to send out mailings to TCI students in lieu of continuing to litigate.

Finally, the fact that "NYLAG wrote to the Department of Education twice before filing this lawsuit" (Mem. at 18) has no bearing. The Complaint alleges that "[o]n November 15, 2017, [NYLAG], counsel for Plaintiffs, sent a letter to the Department requesting that the Department "send[] information to all potentially eligible students about the availability of closed school

discharge, as required by regulation," and "[o]n June 26, 2018, NYLAG again wrote to the Department to "ask that [the Department] immediately identify all those TCI students potentially eligible for a closed school discharge; mail closed school discharge applications to all such borrowers in order to make them aware of their right to seek a discharge of their federal student loans; and suspend collection efforts, as required by regulation." (Compl. ¶¶ 44, 46.)  On November 30, 2017, the Department sent an email notification to all servicers servicing the loans of former TCI students, informing them that "some of the impacted students may not have received the required outreach and assistance as spelled out in 34 CFR 685.214(f) (or §682.402(d) for FFEL loans) following the aforementioned institution's closure" and instructing the servicers to send such notices to the extent they had not already done so.  (Tessitore Decl. ¶ 9.)  On July 23, 2018, the Department contacted the servicers again, requiring them "to confirm that required outreach (see attached reminder) was performed following the closure of [TCI] (e.g. borrowers identified and discharge applications sent)."  (*Id.* ¶ 10.)  OSLA stated that it had, in fact, sent the required notices.  (*Id.* ¶ 11.)  Accordingly, during the time NYLAG alleges that it sent letters to the Department, the Department was in fact taking measures to ensure that the required notifications had been sent out.  When the Department subsequently determined that OSLA had not, in fact, sent the required notices, it took prompt action to remedy the issue. Moreover, to the extent Plaintiffs now challenge the fact that notice of potential eligibility for discharge was provided to some students by electronic means, their letters—like their Complaint—say nothing about this issue.

Finally, insofar as Plaintiffs argue that Defendant's position was not substantially justified because the Department "did not send a Second Notice in any form to Named Plaintiffs or any class members" (Mem. at 15), this argument makes no sense.  As Plaintiffs are aware,

while the provision that now requires a second round of notice 60 days after the first was

originally scheduled to go into effect on July 1, 2017, the Department stayed the relevant

regulation before it became effective.  On September 17, 2018, the District Court for the District

of Columbia vacated that stay effective October 12, 2018, *see Bauer*, 332 F. Supp. 3d 181, which

it subsequently extended to October 16, 2018, *Bauer*, Case No. 17-1330 (RDM), October 12,

2018 Minute Entry—a year after all servicers other than OSLA provided the first notice, and

only one day before Plaintiffs filed this lawsuit.  It makes no sense to argue that the Department

had to send a second round of notice in the fall of 2017 even though the regulation requiring such

notice was not then in effect.  At any rate, it cannot seriously be disputed that the Department's

"failure" to abide by a regulation that would not go into effect for another year was substantially

justified.[6]

**B.  The Department Position in this Litigation Was Substantially Justified**

The Department's positions in this litigation were also reasonable.  Plaintiffs attempt to

argue otherwise by contending that the Department's motion to dismiss was "foreclosed by the

Second Circuit's recent decision in *Salazar v. King*, 822 F. 3d 61 (2d Cir. 2016)," which they

describe as having "nearly identical material facts" (Mem. at 5; *see also id.* at 12.)  This

argument mischaracterizes the Second Circuit's opinion in *Salazar* and the arguments in

Defendant's motion to dismiss.  As Plaintiffs and this Office are both well aware—having

litigated *Salazar*—the plaintiffs in that case, who were former students of certain beauty schools,

---

[6] Plaintiff has elsewhere attempted to justify its absurd argument that the Department violated the APA by failing to abide by a regulation that was not in effect by contending that, at the point the court vacated the stay, the regulation went into effect "retroactive to July 1." (Dkt. No. 25 at 19-20.)  The court's opinion does not say that and Plaintiff's position is simply wrong—a regulation requiring a specific action to be taken at a particular point in time cannot go into effect retroactively, because there is no way to take the specified action retroactively.

contended that the schools falsely certified that they had an ability to benefit from the education they received there, as required by the HEA.  Plaintiffs alleged that the Department violated a regulation that requires it to suspend collection of student loans where it has reliable information that a school made such false certifications, and notify students that they might be eligible for discharge of their loans.  Unlike in this case, where the loan servicers provided notice to former TCI students of their potential eligibility for discharge but Plaintiffs contend that the form of that notice was insufficient, in *Salazar* the Department undisputedly did not provide notice to any students of the beauty schools, because it took the position that such notice was not required.  *Id.* at 71.  In the portion of the opinion Plaintiffs cite, the court held that the case was not moot even though the loans of all of the named plaintiffs had been discharged—and thus that the class action could continue despite not having any named plaintiff who would benefit from the relief sought—due to the "inherently transitory" nature of their claims and the fact that, because notice was not provided to any former students, there were other class members whose injuries would be redressed by the requested relief.  *Id.* at 72-74.  Unlike in *Salazar*, the Department has never argued that this case should be dismissed because all of the named plaintiffs have received a discharge of their loans (though that was true).  To the extent the Department made any argument regarding the discharge of Plaintiffs' loans, it was solely that Quero's individual claims were moot despite the fact that he was not personally sent a notice of potential eligibility for discharge, because the only reason OSLA did not send notice to him at the point it sent it to other OSLA students was that he had already applied for discharge of his loans.  (Dkt. No. 21 at 8-9; Dkt. No. 29 at 9-10.)  That argument is in no way foreclosed by *Salazar*.

Plaintiffs' position also ignores the fact that the Department's decision to file a motion to dismiss was based on the allegations in Plaintiff's complaint, which gave no indication of the

arguments regarding the sufficiency of the Department's form of notice on which Plaintiffs subsequently relied, and on which the Court based its decision to deny Defendants' motion to dismiss.  As discussed above, the complaint brought suit on behalf of a proposed class consisting of *all* Direct Loan borrowers, and parents who borrowed on behalf of students, who were enrolled in TCI when it closed or withdrew not more than 120 days before its closure.  (Compl. ¶ 122.)  The Complaint alleged that, when TCI closed, the Department failed to send notice of potential eligibility for discharge to *any* students or parents, or suspend collection on their loans. (*Id*. ¶¶ 131-32.)  As discussed in Defendant's motion to dismiss, the situation Plaintiffs alleged in their complaint—and which allegedly caused the injury that they alleged gave them standing— simply did not occur.  In many cases—where students did not elect to receive electronic correspondence—the Department did, in fact, send notice of potential eligibility for discharge by traditional mail.  In the other cases—*i.e.*, where students elected to receive electronic correspondence, notice was provided by that means.  In all cases, the Department did, contrary to Plaintiffs' allegations, suspend collection on students' loans.  Based on these facts, it was entirely reasonable for Defendant to move to dismiss.  While Plaintiffs subsequently developed a new theory challenging the *method* of notice, and the Court concluded there were factual disputes that precluded dismissal on that theory, the Court's decision does not render Defendant's motion "devoid of legal or factual support."  *Kirkland*, 706 F.2d at 105.

While Plaintiffs attempt to argue that they had standing regardless of whether they were challenging the method by which the Department provided notice because they did not "in fact receive[]" such notice (Mem. at 12-13), that argument misses the mark.  Plaintiffs have never argued, nor could they, that the HEA and Department regulations require that the Department ensure actual receipt of notice by every student.  *See* 34 C.F.R. § 685.214(f)(1)-(3) (requiring

Department to "mail[]" borrowers applications and instructions, and saying nothing about confirming receipt).  Nor do Plaintiffs dispute that measures were taken to provide notice to them.  *See supra* at 6-7.  Standing requires not just some injury, but one that is legally cognizable.  *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-107 (2d Cir. 2008) (to establish standing, a plaintiff must demonstrate harm to a "*legally protected interest*" that is caused by the alleged actions of the defendant and would be redressed by the requested relief (emphasis added).)  Accordingly, Plaintiffs' standing was dependent on their belated argument that the notice the Department provided was legally insufficient.[7]  At any rate, this issue was in no way addressed in *Salazar*, which dealt with the question of whether the fact that the named plaintiffs' loans had already been discharged mooted their claims and thereby disposed of the putative class action.  *Salazar*, 822 F. 3d at 72-74.

---

[7] Plaintiffs have never contended that, where servicers sent notice by traditional mail, that notice was insufficient, even if those borrowers did not actually receive or open the mail.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs'

motion for attorneys' fees.


Dated:   April 13, 2020
         New York, New York

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York
                              *Attorney for the Defendant*

                    By:    /s/ Rachael L. Doud
                           _____
                           RACHAEL L. DOUD
                           Assistant United States Attorney
                           86 Chambers Street, 3rd Floor
                           New York, New York 10007
                           Tel.:  (212) 637-3274
                           Fax:  (212) 637-2786
                           E-mail: rachael.doud@usdoj.gov