UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER QUERO, COURTNEY FRANCIS, and KELLIN RODRIGUEZ, individually and on behalf of all persons similarly situated,<br><br>                          Plaintiffs,<br><br>     -v-<br><br>PHIL ROSENFELT, in his official capacity as Acting Secretary of the United States Department of Education,<br><br>                        Defendant. | CIVIL ACTION NO.: 18 Civ. 9509 (GBD) (SLC)<br><br>**REPORT & RECOMMENDATION** |

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE GEORGE B. DANIELS**, United States District Judge:

## I.    INTRODUCTION

Before the Court is the motion of Plaintiffs Christopher Quero ("Quero"), Courtney Francis ("Francis"), and Kellin Rodriguez ("Rodriguez") (collectively, "Plaintiffs") by their attorneys, the New York Legal Assistance Group ("NYLAG"), seeking attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d) and the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA") (the "Motion"). (ECF No. 47). Defendant Phil Rosenfelt ("Rosenfelt" or "Defendant"), Acting Secretary of the United States Department of Education ("DOE") opposes the Motion. (ECF No. 51).

For the reasons set forth below, I respectfully recommend that the Motion be DENIED.

## II.    BACKGROUND

### A.  Factual and Regulatory Background

Plaintiffs brought suit on behalf of themselves and a proposed class of roughly one thousand Direct Loan[1] borrowers who attended (or parents who borrowed on behalf of students who attended) Technical Career Institutes, Inc. ("TCI").  (ECF No. 8 ¶¶ 1, 7, 14, 122–23).  On September 1, 2017, TCI closed, at which time it had an enrollment of 1,400 students, three-quarters of whom financed their education with federal student loans.  (Id. ¶¶ 1, 36, 122–23).  Plaintiffs allege in their complaint (the "Complaint") that the DOE arbitrarily and capriciously withheld agency action and violated the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706 by withholding relief owed to them following TCI's closure.  (See ECF No. 8).

### 1.  Notice of the Closed School Discharge

Federal student loan borrowers who attend a school that closes may be eligible under federal regulations for a "closed school discharge," relieving them of any repayment obligation, refunding previous loan payments and correcting their credit reports (the "Closed School Discharge").  (ECF No. 8 ¶¶ 2, 16–18, 23); 20 U.S.C. § 1087(c)(1), 34 C.F.R. § 685.214(b).[2]  Under

---

[1] Title IV of the Higher Education Act ("HEA") of 1965, 20 U.S.C. §§ 1070–99 provides the statutory authorization for federal student loans.  The DOE administers the William D. Ford Federal Direct Loan Program to lend money directly to eligible students and parents ("Direct Loans").  20 U.S.C. § 1087a et seq.; see "What types of federal student loans are available?" Federal Student Aid (last visited Jan. 30, 2021), https://studentaid.gov/understand-aid/types/loans.  "Direct loans are serviced by third parties through servicing contracts with the [DOE].  When a student borrower takes out a . . . Direct Loan, he or she must enter into a Master Promissory Note ("MPN") contract with . . . the [DOE] (for a Direct Loan)." Hyland v. Navient Corp., No. 18 Civ. 9031 (DLC), 2019 WL 2918238, at *1 (S.D.N.Y. July 8, 2019).

[2] If a borrower is "unable to complete the program in which such student is enrolled due to the closure of the institution . . . then the Secretary [of the DOE] shall discharge the borrower's liability on the loan (including interest and collection fees)[.]"  20 U.S.C. § 1087(c)(1).  In the event of a Closed School Discharge, relief includes:  (1) relief "of any past or present obligation to repay the loan and any accrued charges or collection costs"; (2) reimbursement of amounts paid on the loan; (3) assistance authorized by

these regulations, following the school closure, the DOE "must notify all potentially eligible borrowers about the availability of a closed school discharge by mailing each borrower the discharge application form" along with instructions (the "Discharge Notice"), and must also "suspend collection on affected loans for sixty days."  (Id. ¶ 3).  Service of the Discharge Notice by mail is required if the borrower's address is known.  34 C.F.R. § 685.214(f)(2).[3]  Here, the DOE did not mail the Discharge Notice to Plaintiffs or suspend collection on their loans.  (ECF No. 8 ¶ 4).  The Complaint alleges that the DOE failed to send the Discharge Notice to any "TCI borrowers of their potential eligibility for closed school discharges" and "refus[ed] to suspend collection of TCI borrowers' loans[.]"  (Id. ¶ 131).

The named Plaintiffs, Quero, Francis, and Rodriguez, were each New York City residents who were unable to complete their programs of study due to TCI's closure.  (ECF No. 8 ¶¶ 10–12, 79, 94, 111).  Quero obtained $20,000 in Direct Loans to finance his tuition.  (Id. ¶ 76).  At the time of the Complaint's filing, Quero had not been mailed the Discharge Notice.  (Id. ¶ 81).

---

Title IV of the Act; and (4) reporting the discharge of the loan to consumer reporting agencies in order to delete all adverse credit history assigned to the loan.  34 C.F.R. § 685.214(b).

[3] The "discharge procedures" that apply for loans disbursed before July 1, 2020 call for, in relevant part:
> (1) After confirming the date of a school's closure, the Secretary identifies any Direct Loan borrower (or student on whose behalf a parent borrowed) who appears to have been enrolled at the school on the school closure date or to have withdrawn not more than 120 days prior to the closure date.
> (2) If the borrower's current address is known, the Secretary mails the borrower a discharge application and an explanation of the qualifications and procedures for obtaining a discharge. The Secretary also promptly suspends any efforts to collect from the borrower on any affected loan.  The Secretary may continue to receive borrower payments.
> . . .
> (5) Upon resuming collection on any affected loan, the Secretary provides the borrower another discharge application and an explanation of the requirements and procedures for obtaining a discharge.

34 C.F.R. § 685.214(f).

Likewise, Francis received $5,500 in Direct Loans for his TCI tuition and, at the time of the Complaint's filing, had not been mailed the Discharge Notice.  (Id. ¶¶ 91, 97).  Rodriguez obtained $11,000 in Direct Loans to finance his TCI tuition and was not mailed the Discharge Notice at the time of the Complaint's filing.  (Id. ¶¶ 108, 113).  According to Plaintiffs, for over a year following TCI's closure, they did not know about the availability of the Closed School Discharge, yet during this time the DOE actively collected on their loans, the balances of which increased with interest.  (ECF No. 47 at 17–18) (citing ECF No. 8 ¶¶ 84, 101, 116, 66, 87–88, 104–05, 119–20)).

Defendant contends that Francis and Rodriguez elected to receive electronic, rather than mailed, correspondence from the DOE and their loan servicers, and, in fact, did receive notifications via email that there were messages to review in their online loan servicing accounts.  (ECF No. 51 at 19–21).   Francis elected on September 14, 2016 to receive electronic correspondence, and on October 20, 2016, his loan servicer, EdFinancial Services ("EdFinancial"), sent him an email instructing him to set up an online account.  (ECF No. 30 ¶¶ 7, 9).  In electing to receive electronic correspondence, "Francis was presented with terms and conditions that . . . 'describe[d] how the [DOE] and its agents and contractors, including your federal loan . . . servicer(s) ('we'), deliver correspondence associated with your federal loan,' and selected the option providing 'I want to receive my correspondence from the [DOE] and my federal loan . . . servicer **by email."**  (ECF No. 51 at 19–20) (quoting ECF No. 30-2 at 3, 5) (emphasis in original quoted source).

On October 3, 2017, EdFinancial posted a letter in Francis' online account, informing him that he might be eligible for a loan discharge, and also emailed him directly at the address he provided, informing him that there was a message to review in his online account.  (ECF No. 30

¶ 10). Francis's loans were in grace or non-repayment status at the time, through February 2018, so a 60-day suspension of collections under the Closed School Discharge was inapplicable. (Id. ¶ 11).

On August 29, 2014, Rodriguez elected to receive electronic correspondence. (ECF No. 30 ¶ 13). In selecting electronic correspondence, Rodriguez was also presented with terms and conditions that made clear that both the DOE "'and its agents and contractors, including your federal loan servicer ('we'), deliver correspondence associated with your federal student loans to you electronically,' and selected the option providing 'I want to receive electronic correspondence from the [DOE] and my federal loan servicer(s).'" (ECF No. 51 at 20) (quoting 30-1 at 2–3) (emphasis added).

On September 10, 2014, Rodriguez's loans were assigned to be serviced by PHEAA / FedLoan Servicing ("FedLoan"). (ECF No. 30 ¶ 14). On September 10, 2014, FedLoan emailed Rodriguez a letter explaining that it had been assigned his loans and suggesting he set up an online account, and on June 16, 2015 FedLoan sent another email confirming that in light of his election to receive electronic communications, FedLoan would be sending information regarding his loans "to his paperless inbox in his online account, and would notify him by email that correspondence had been placed there." (Id. ¶¶ 14–15). On October 6, 2017, following TCI's closure, FedLoan posted in Rodriguez's online account a letter informing him that he might be eligible for a Closed School Discharge, and sent him an email notifying him that he had received a new message in his online account. (Id. ¶ 16). Rodriguez's loans were in grace (non-repayment) status at the time, such that "a 60-day suspension of collections was not needed." (Id. ¶ 17).

Quero's loans were serviced by Oklahoma Student Loan Association ("OSLA") which, Defendant acknowledges, "did not timely send notice of potential eligibility of closed school discharge to its students" following TCI's closure.  (ECF No. 30 ¶ 19).  OSLA first sent notice on November 27, 2018, and sent a second notice on February 22, 2019, although neither notice was sent to Quero because he previously applied for, and on December 4, 2018, received a loan discharge.  (Id. ¶¶ 19, 21).

B. **Procedural Background**

On October 17, 2018, Plaintiffs filed the Complaint seeking declaratory and injunctive relief.  (ECF Nos. 1; 8 at 20–21).  Their requested relief included a declaration that the DOE's actions, such as failing to notify the proposed class members of their eligibility for a Closed School Discharge and to suspend collection on their loans, constituted an unlawfully withheld agency action contrary to the HEA and the APA.  (ECF No. 8 at 20–21).  Plaintiffs sought injunctive relief in the form of immediate suspension of collection on Direct Loans disbursed to class members in connection with attending TCI, sending class members notice of their potential eligibility to apply for a Closed School Discharge of their loans, and sending a second notice to all class members of their potential eligibility to apply for a Closed School Discharge.  (Id. at 21).

On February 8, 2019, Defendant moved to dismiss the Complaint for lack of jurisdiction (the "Motion to Dismiss").  (ECF No. 20).  The parties conducted limited discovery relevant to the Motion to Dismiss.  (See ECF No. 47 at 10, 17).  Plaintiffs then opposed the Motion to Dismiss.  (ECF No. 25).  The Honorable George B. Daniels heard oral argument on May 23, 2019, at the conclusion of which he denied the Motion to Dismiss.  (See ECF No. 38).

On September 23, 2019, the parties advised the Court that they had "come to an agreement on all terms of a stipulation of settlement, and all but one exhibit to that stipulation . . . [and] expect that process to be completed shortly, at which point the parties plan to submit the settlement agreement to the Court for its approval" (the "Settlement").  (ECF No. 41).  On October 23, 2019, Plaintiffs filed, with Defendant's consent, their Motion for "Approval of Class Action Settlement," (the "Motion for Settlement Approval"), which included, among other documents, a Stipulation of Settlement ("Stipulation") and a "[Proposed] Final Order Approving Class Action Settlement Pursuant to Fed. R. Civ. P. 23."  (ECF Nos. 44, 44-1).

Plaintiffs noted in the Motion for Settlement Approval that the Settlement:

provides to the Class Members relief that Plaintiffs view as the principal relief sought in the complaint, requiring the [DOE] to: mail to all Class Members the closed school discharge application and an explanation of the discharge, suspend collection on Class Members' loans for sixty days, and subsequently mail a second discharge application to all Class Members.

(ECF No. 44 at 2).  The parties also stipulated to certification of a class for the Settlement, with Quero, Francis and Rodriguez as class representatives and NYLAG as Class Counsel.  (ECF Nos. 44 at 3, 44-1 at 3).  The stipulated Settlement class was comprised of all TCI members potentially eligible for the Closed School Discharge, excluding any student who already applied for or received a Closed School Discharge.  (ECF No. 44 at 3).

The parties' Stipulation provided that it "shall be of no force and effect unless and until it is granted final approval by the Court . . . Upon entry by the Court, this Stipulation is final and

binding upon the Parties, their successors, and their assigns."  (ECF No. 44-1 ¶ 14).  The Stipulation also provided that neither Defendant nor the DOE admitted liability.  (Id. ¶ 13).

On December 17, 2019, Judge Daniels approved the Settlement and entered the Final Order Approving Class Action Settlement Pursuant to Fed R. Civ. P. 23 (the "Settlement Approval Order").  (ECF No. 45).  The Settlement Approval Order incorporated all terms of the parties' Stipulation.  (Id. ¶ 7).  In the Settlement Approval Order, Judge Daniels agreed that "[t]he Settlement is fair, reasonable and adequate."  (Id. at 2, ¶ 4).  The Settlement Approval Order also stated that the Settlement:

> provides the Class much of the relief sought in the complaint, by obligating the [DOE] to promptly mail all Class members notice of their entitlement to submit applications seeking closed school discharges of their TCI Loans . . . and further provides that [DOE] will suspend collection on certain loans . . . The Settlement thus provides that Class members will receive much of the relief to which they could potentially be entitled if they were to litigate the case to trial and prevail.

(ECF No. 45 at 2–3).

Accordingly, the Settlement Approval Order noted that "[t]he Settlement resolves all claims and issues in the case and those claims are dismissed with prejudice."  (ECF No. 45 at 4). The Settlement Approval Order also provided that "Plaintiffs may submit any claim for reasonable attorneys' fees pursuant to the [EAJA], and Fed. R. Civ. P. 23(h) within 90 days of this Order."  (Id. ¶ 6).  The same day, the case was terminated.  (Minute Entry, Dec. 17, 2019).

On March 16, 2020, within the time period prescribed by the Settlement Approval Order, Plaintiffs filed their Motion.  (ECF Nos. 46–48).  On April 13, 2020, Defendant opposed the Motion (ECF Nos. 51–52), and on April 20, 2020, Plaintiffs replied (ECF Nos. 55–56).  On April 21, 2020, Judge Daniels referred the Motion to the undersigned.  (ECF No. 57).

### III.   DISCUSSION

#### A.   Legal Standards for Attorney's Fees under the EAJA

Under the EAJA, a party is eligible to recover attorneys' fees when the party is the "prevailing party" in a civil action against the United States.  The EAJA provides that:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

> For purposes of the statute, a party is generally defined as:

> (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed . . .

28 U.S.C. § 2412(D)(2)(B).

To be considered a "prevailing party," a plaintiff "must achieve a material, judicially-sanctioned alteration of the legal relationship that favors it.  Independence Project, Inc. v. Ventresca Bros. Constr. Co. Inc., 397 F. Supp. 3d 482, 490 (S.D.N.Y. 2019) (citing Perez v. Westchester Cty. Dep't of Corr., 587 F.3d 143, 149 (2d Cir. 2009)).  A plaintiff may be considered a prevailing party following a settlement if the relief obtained was "of the same general type" as the relief sought.  Lyte v. Sara Lee Corp., 950 F.2d 101, 104–05 (2d Cir. 1991) (finding that plaintiff was a prevailing party following money settlement that was "not 'de minimis' or merely 'technical,' notwithstanding the absence of "some type of judicial declaration suggesting that

defendant violated plaintiff's rights," which is not required).  Where a court retains jurisdiction over a private settlement agreement, there is sufficient judicial authority to convey prevailing party status on plaintiffs.  See Roberson v. Giuliani, 346 F.3d 75 (2d Cir. 2003).  Similarly, an order of settlement that is "only made operative by the Court's review and approval[,]"satisfies the requirement of judicial imprimatur.  Perez, 587 F.3d at 152 (holding that an order approving a settlement that provided plaintiffs' lawsuit would only be dismissed "upon the Court's approval and entry of this Stipulation and Order" and was approved by the district judge, bore the imprimatur of the court).

Under the EAJA, attorneys' fees shall be awarded to a prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  Examining this text, the Supreme Court in Pierce v. Underwood explained that "substantially justified" does not mean "justified to a high degree," "but rather 'justified in substance or in the main'– that is, justified to a degree that could satisfy a reasonable person.  That is no different from the 'reasonable basis both in law and fact' . . ."  487 U.S. 552, 565 (1988) (emphasis added).  Under this standard, the United States' position "can be justified even though it is not correct, and . . . it can be substantially (i.e. for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."  Id. at 566 n.2; see also Kirkland v. R.R. Ret. Bd., 706 F.2d 99, 105 (2d Cir. 1983) (denying EAJA fee award where the government's action "although erroneous, was not so devoid of legal or factual support that a fee award is appropriate.")  A court must look to "not what the law is when the EAJA application is made, but rather whether the government was substantially justified in believing the law not to have foreclosed its position

during the underlying litigation."  Commodity Futures Trading Comm'n v. Dunn, 169 F.3d 785, 787 (2d Cir. 1999).

The scope of the "position of the United States" includes both the position taken during the civil litigation and "the action or failure to act by the agency upon which the civil action is based[.]" 28 U.S.C. § 2412(d)(2)(D); see Commissioner, I.N.S. v. Jean, 496 U.S. 154, 159, n.7 (1990) (examining Section 2412(d)(2)(D) and determining that "only one threshold determination for the entire civil action is to be made," as "Congress' emphasis on the underlying Government action supports a single evaluation of past conduct").  Although mindful that a civil lawsuit may have numerous phases, "the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."  Jean, 496 U.S. at 161–62.

Courts have found the government's position not to be substantially justified when, for example, its decisions at the agency level contained significant errors of law and fact and failed to provide explanations of its rationale, see Gomez-Beleno v. Holder, 644 F.3d 139 (2d Cir. 2011), or the agency disregarded or mischaracterized evidence.  Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79 (2d Cir. 2009); see also Chursov v. Miller, No. 18 Civ. 2886 (PKC), 2019 WL 5092007, at *1 (S.D.N.Y. Oct. 11, 2019) (finding that agency's actions were "arbitrary, capricious, and without foundation in the record," and therefore not "substantially justified"); Hill v. Comm'r of Soc. Sec., No. 14 Civ. 9665 (GBD) (BCM), 2017 WL 5632813, at *4 (S.D.N.Y. July 27, 2017) (finding that Commissioner's position was not "substantially justified" where agency's administrative law judge "mischaracterize[ed] evidence"); Stroud v. Comm'r of Soc. Sec. Admin., No. 13 Civ. 3251 (AT) (JCF), 2015 WL 2114578, at *3 (S.D.N.Y. Mar. 24, 2015) (finding that Commissioner's position was not "substantially justified" where agency's commentary on applicable regulation

"undermined" his position and supported the claimant's), adopted as modified, 2015 WL 2137697 (S.D.N.Y. May 6, 2015).

**B.  Application**

In assessing whether Plaintiffs are entitled to attorneys' fees under the EAJA, the Court first considers whether Plaintiffs were the prevailing party, and finds that they were.  The Court next examines whether Defendant was substantially justified in its position, and concludes that it was.  Accordingly, the Court does not examine whether special circumstances exist, and respectfully recommends that Plaintiffs are not entitled to a fee award under the EAJA.

### 1.  Plaintiffs were the Prevailing Party.

Plaintiffs argue that they were the prevailing party because they obtained an "extremely favorable class-wide settlement" that provided "essentially the same relief" sought in the Complaint, consisting of mailing of a notice to the class members by postal mail (as well as notice by email, in addition, to certain class members), suspending collection on past-due TCI loans, and a second mailed notice.  (ECF No. 47 at 14–15).  The Settlement, Plaintiffs argue, materially altered the legal landscape and was judicially sanctioned.  (Id.)

Defendant does not directly deny that Plaintiffs were a prevailing party.  (See ECF No. 51).  Defendant notes that DOE was "already taking measures to remedy OSLA's failure to send the notices at the point Plaintiffs filed suit . . . so Plaintiffs' lawsuit did not even cause the relief that was provided with respect to this issue."  (Id. at 16).  Defendant also contends that the Settlement did not, as Plaintiffs claim, provide "essentially all relief sought" in the Complaint (ECF No. 47 at 23) because "the settlement agreement did not include any admission of fault by the [DOE]" and

did not include a declaratory judgment, which was "a substantial component of the relief sought in [the] complaint." (ECF No. 51 at 22).

Here, Plaintiffs obtained a favorable Settlement that became operative only on approval by the Court, and that compelled Defendant to act. Any failure by Defendant to act in accordance with the Settlement would amount to violation of the Settlement Approval Order. (ECF No. 45). Therefore, the Court finds that Plaintiffs are a prevailing party.

The parties' Stipulation was clear that it had "no force and effect unless and until it [was] granted final approval by the Court[,]" and that it was only "[u]pon entry by the Court" that it became "final and binding." (ECF No. 44-1 ¶ 14). Accordingly, "[i]n a quite literal sense" the parties' Settlement was not operative until the Court approved it, and it therefore bore judicial imprimatur. Perez, 587 F.3d at 152. Indeed, after Judge Daniels entered the Settlement Approval Order the case was terminated the same day. (Minute Entry, Dec. 17, 2019). As Plaintiffs correctly argue, as a result of the Settlement, the DOE is "now legally incapable of acting as it did before the entry of the [Settlement Approval] Order." (ECF No. 47 at 15) (quoting Perez, 587 F.3d at 150) (examining a settlement agreement and order that mandated parity in the provision of Halal meat to Muslim inmates on the same basis as Kosher meat was provided to Jewish inmates)). See Independence Project, 397 F. Supp. 3d at 492 (finding plaintiff was a prevailing party where settlement agreement required defendant to make physical modifications to be in compliance with the court's order). As in Perez and Independence Project, the Settlement required action by the DOE – here, in pertinent part, furnishing notice by mail and ceasing to collect on certain loans – in order to be in compliance with the Court's Settlement Approval Order.

Also relevant to the "imprimatur of the District Court" is that the terms of the Settlement Approval Order included the Court's assessment that the Settlement was "fair, reasonable, and adequate" indicating judicial sanction of the settlement.  (ECF No. 45 ¶ 4); cf. Perez, 587 F.3d at 152–53 (finding "strong evidence" the District Judge sanctioned the settlement through close management of the case, including advising the parties on his interpretation of the state of the law and suggesting appropriate settlement terms).

Although Defendant is correct that the Stipulation and Settlement Approval Order contained no admission of liability, and did not provide Plaintiffs a declaratory judgment, nevertheless, as Judge Daniels explained in the Settlement Approval Order, Plaintiffs received via the Settlement "much of the relief sought in the complaint," (ECF No. 45 at 2), which is sufficient to show that Plaintiffs were the prevailing party.  See Lyte, at 950 F.2d at 104–05.

### 2.   Defendant's position was substantially justified.

Under the EAJA, because Plaintiffs were a prevailing party, they are entitled to attorneys' fees and expenses unless the position of the United States was substantially justified, or special circumstances make an award unjust.  See 28 U.S.C. § 2412(d)(1)(A).

Plaintiffs argue that the DOE's conduct predating this litigation and Defendant's conduct during this action were not substantially justified, entitling Plaintiffs to a fee award under the EAJA.  (See ECF No. 47 at 15–24).  Plaintiffs assert that the DOE's failure to mail Discharge Notices was a violation of governing regulations that "explicitly require[]" notice by mail; that the electronic notices sent to Plaintiffs were insufficient, as both a violation of regulations requiring notice by mail and for failure to provide notice; and that the DOE violated regulations by failing to send to Plaintiffs a second notice.  (Id. at 18–22).

With respect to Defendant's conduct during the litigation of this action, Plaintiffs allege that the arguments advanced in the Motion to Dismiss were contrary to Salazar v. King, 822 F.3d 61 (2d Cir. 2016), and were therefore not substantially justified.  (ECF No. 47 at 16–18).  Plaintiffs also note Judge Daniels' remarks in denying the Motion to Dismiss as evidence of the lack of substantial justification.  (Id. at 16; see ECF No. 38).  Plaintiffs also emphasize the favorable terms of the Settlement, and the gulf between its terms and Defendant's position before this litigation as evidence that Defendant's "pre-litigation position was not substantially justified."  (ECF No. 47 at 23).

Defendant counters that the DOE's position is substantially justified, especially construing its position in its totality, as the Court must.  (See ECF No. 51 at 16) (citing Jean, 496 U.S. at 161–62).  Defendant frames the DOE's actions as overwhelmingly compliant with its obligations:  out of eleven companies servicing the loans of TCI students, "all but one . . . timely sent the required notice and suspended collection on students' loans[.]"  (ECF No. 51 at 5, 15).  Accordingly, Defendant argues that "the delay in one out of eleven servicers providing notice does not justify any award of fees, much less for the entire lawsuit."  (Id. at 6).

Defendant also points out that the record reflects that these servicers, who acted as agents of DOE, see Hyland, 2019 WL 2918238, at *1–2 (noting that under 20 U.S.C. § 1087f(b)(2) the DOE "may enter into contracts for . . . the servicing and collection of [Direct Loans]"), sent the Discharge Notice to borrowers "by a mix of electronic means — where the student had elected to receive electronic correspondence — and traditional mail — where the student had not."  (ECF No. 51 at 9).  Electronic notice in this manner comported with federal law under the E-Sign Act, 15 U.S.C. § 7001(c)(1) and was the customary practice of loan servicers.  (ECF No. 51

at 19, 9).  With respect to the derelict servicer, OSLA, Defendant discovered during "routine offsite monitoring" before the filing of this lawsuit that OSLA failed to send notices and instructed it to do so.  (Id. at 9).  On November 27, 2018 – just over a month after this lawsuit was filed (see ECF No. 1) – OSLA sent the required notices.  (Id.; ECF No. 22 ¶¶ 9–11).  Defendant argues that the purported failure to send a second notice sixty days after the first was justified because "the regulation requiring the [DOE] to do so was stayed at the point TCI closed and did not go into effect until one day before Plaintiffs filed suit."  (ECF No. 51 at 8) (citing Bauer v. DeVos, 332 F. Supp. 3d 181, 186 (D.D.C. 2018).  Defendant argues that its conduct in this litigation, especially filing the Motion to Dismiss, was also substantially justified and was not foreclosed by Salazar. (ECF No. 51 at 24–27).

The Court's task here is to determine whether Defendant was "justified in substance or in the main" in the sum of its conduct, Pierce, 487 U.S. at 565, including notice by ten of eleven loan servicers via a mix of notice by mail and notice electronically (where Plaintiffs consented to electronic notice), and the uncontested failure of one of eleven loan servicers to timely serve notice, which was rectified shortly after the Complaint was filed and filing the Motion to Dismiss. For the following reasons, the Court finds that the DOE's position was substantially justified, and therefore does not reach a determination whether special circumstances would make an award unjust or whether the attorneys' fees requested are reasonable.

First, as Plaintiffs acknowledge, "[w]here . . . the law requires that something be provided in writing, parties must provide it in writing unless and until the consumer has given affirmative and informed consent to receive it electronically."  (ECF No. 47 at 22) (emphasis in original) (citing E-Sign Act, 15 U.S.C. § 7001(c)(1)).  The E-Sign Act provides in pertinent part that "if a statute,

regulation, or other rule of law requires that information relating to a transaction . . . be provided

or made available to a consumer in writing, the use of an electronic record to provide or make

available . . . such information satisfies the requirement that such information be in writing" if

certain requirements are met, including the consumer's affirmative consent and right to

withdraw.  15 U.S.C. § 7001(c)(1).

Under the E-Sign Act, consent by an electronic signature provided electronically "cannot

be 'denied legal effect . . . simply because it is in electronic form.'"  O'Callaghan v. Uber Corp.,

No. 17 Civ. 2094 (ER), 2018 WL 3302179, at *7 n.9 (S.D.N.Y. Jul. 5, 2018) (citing Specht v. Netscape

Commc'ns Corp., 306 F.3d 17, 26 n.11 (2d Cir. 2002)).

Against this backdrop, following the election of class members including Plaintiffs Francis

and Rodriguez to receive correspondence from both the DOE and their loan servicers

electronically, the DOE was "justified to a degree that could satisfy a reasonable person" to

permit notices by email.  Pierce, 487 U.S. at 565 (1988).  While Plaintiffs dispute the sufficiency

of the consent and argue that "[t]he elections [by Rodriguez and Francis] on their face covered

only the studentloans.gov website," (ECF No. 47 at 22), the sufficiency of the reasonableness of

notice is "clearly a fact-intensive inquiry," that can hinge on nuanced details such as, for instance,

whether the website's layout requires "clickwrap" or "browsewrap" agreements.  See Meyer v.

Uber Techs., Inc., 868 F.3d 66, 75–76 (2d Cir. 2017) (examining web-based contracts and finding

company provided reasonably conspicuous notice of terms of service to which consumer

manifested assent to be bound).  Here, the record includes sworn representations by DOE

Supervisory Management and Program Analyst Chad Keller, and supporting exhibits, concerning

the elections by Rodriguez and Francis to receive notice electronically and the language of those

notices.  (See ECF Nos. 30, 30-1, 30-2).  As described supra § II(A)(1), the record shows that Francis and Rodriguez consented to electronic communications by the DOE "and its agents and contractors."  (ECF Nos. 30-2 at 3, 5; 30-1 at 2–3).[4]

Second, the Court finds that Plaintiffs' suggestion that the Second Circuit's decision in Salazar renders Defendant's position without substantial justification is misplaced.  Salazar, like this case, was a class action brought by students against a defunct chain of for-profit schools (the "Wilfred" schools).  822 F.3d at 68.[5]  The Salazar plaintiffs alleged that DOE failed to comply with its obligations to temporarily suspend collection of loans and notify borrowers of their discharge rights.  Id. at 72.  The court noted that, with one narrow exception (students who went to a particular Philadelphia Wilfred branch between 1987–89), "the DOE has refused to temporarily cease collection on federally guaranteed student loans attributable to Wilfred or to notify all students who attended Wilfred schools of their potential eligibility for a permanent discharge . . ."  Id. at 71.  The DOE moved to dismiss, primarily on the ground that its actions were unreviewable as the statute committed them to agency discretion and were not as yet final.  Id. at 72.  The DOE also argued that following the discharge of the student loans that the borrowers' claims were rendered moot.  Id.  The district court granted the motion to dismiss, holding that the plaintiffs had not adequately alleged a final agency action subject to judicial review, and

---

[4] Plaintiffs suggest that the "full" administrative record must be provided by Defendant.  However, "substantial evidence" required for judicial review of agency action "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Pierce, 487 U.S. at 564–65 (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  The Court finds that the record on the Motion contained sufficient evidence for purposes of the EAJA.

[5] Wilfred was a nationwide chain of for-profit beauty schools with in excess of 58 campuses and 11,000 students enrolled annually, which the DOJ had been investigating for fraud since the 1980s. Id. at 68, 71.

denied the motion for class certification as moot.  Id. at 64.  Vacating this ruling, the Second

Circuit held that the "inherently transitory" exception to the mootness doctrine applied,[6] that

the plaintiffs had standing, and that the DOE's action was final and reviewable.  Id. at 73–75, 82–

84.

      In contrast, here, Defendant has not denied that the Discharge Notice was required; its

position has been that nearly all of the loan servicers (ten of eleven) did provide notice to the

borrowers, albeit in electronic form.  (See ECF No. 51 at 5).  Defendant argues that the "decision

to file a motion to dismiss was based on the allegations in [Plaintiffs'] complaint, which gave no

indication of the arguments regarding the sufficiency of the [DOE's] form of notice . . ."  (ECF

No. 51 at 25–26; see ECF No. 21 at 2).  To that end, the Complaint alleges that Defendant withheld

agency action "by failing to send notices to TCI borrowers . . ." (ECF No. 8 at ¶ 131).  The inquiry

for the Court is not whether Defendant's position in the Motion to Dismiss was meritorious,

because "a position can be justified even though it is not correct"; instead, the question is

whether a "reasonable person could think it correct" to pursue the Motion to Dismiss, given its

legal and factual underpinning.  Pierce, 487 U.S. at 566 n.2; see also Kirkland v. R.R. Ret. Bd., 706

F.2d at 105.

---

[6] As described at length in Salazar, under this exception, "a case will not be moot, even if the controversy
as to the named plaintiffs has been resolved, if: '(1) it is certain that a claim will remain live for any
individual who could be named as a plaintiff long enough for the court to certify the class; and (2) there
will be a constant class of persons suffering the deprivation complained of in the complaint.'"  822 F.3d at
73 (quoting Olson v. Brown, 594 F.3d 577, 582 (7th Cir. 2010)).  The "critical question for the 'inherently
transitory' exception to mootness is whether the court will have time to rule on a motion for class
certification brought by a plaintiff who has standing to bring a particular claim before the claim will
become moot; the inquiry is not why the claim will become moot."  Id. at 74 (emphasis in original).

The answer to the latter question, in the Court's view, is yes.  All but one of the student loan servicers provided timely notice, and the loan servicers that provided notice electronically did so only after borrowers consented to receiving electronic notice.   This case is therefore sufficiently distinct from <u>Salazar</u> that, regardless of the outcome of the Motion to Dismiss, the Second Circuit's decision in that case did not directly foreclose Defendant's position in this one.  The purported failure to send a second notice in this action was similarly substantially justified as the regulation requiring this notice was stayed at the time TCI closed and was not in effect until October 12, 2018, just one day before this lawsuit was filed.  <u>See</u> <u>Bauer</u>, 332 F. Supp. 3d at 183, 186; William D. Ford Federal Direct Loan Program, 82 Fed. Reg. 27, 621 (June 16, 2017).

Third, the government's position in this case stands in contrast to those cases in which courts have found that the government failed to demonstrate its position was substantially justified.  In <u>Ericksson</u>, for example, a Social Security appeal, the Second Circuit held that the Administrative Law Judge "improperly disregarded or mischaracterized evidence" of the claimant's disability, by "unreasonably minimiz[ing]" the claimant's disability, "unreasonably ignor[ing]" probative medical evidence, and failing to develop the record "despite his statutory and regulatory duty to do so."  557 F.3d at 82–83.

Similarly, in <u>Gomez-Beleno</u>, reviewing a final order of removal, the Second Circuit determined the United States' position was not substantially justified where there were significant errors of fact and law by the Board of Immigration Appeals ("BIA"), including a material misquotation of the "sufragio" (an imminent death threat), the failure to consider one of the petitioner's claims for relief, and lack of an explanation for the BIA's affirmance of the Immigration Judge's denial of one of the claims.  644 F.3d at 141–42 n.2, 145–46.

By contrast, the record here does not indicate the type of conduct exhibited in these cases that warranted the conclusion that the government's position was not substantially justified. <u>See</u> <u>Commodity Futures</u>, 169 F.3d at 787 ("The issue for EAJA purposes is . . . whether the government was substantially justified in believing the law not to have foreclosed its position during the underlying litigation."). Considering the "inclusive whole" of Defendant's position, the Court finds that it was substantially justified.

## IV.     CONCLUSION

For the reasons set forth above, I respectfully recommend that Plaintiffs' Motion be DENIED.

Dated:     New York, New York
           February 1, 2021

_____
SARAH L. CAVE
United States Magistrate Judge

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. <u>See also</u> Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).